LANEY *v.* ARK. REAL ESTATE CO., INC.

5-2493                                    350 S. W. 2d 911

Opinion delivered November 20, 1961.

*Gaughan & Laney,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott* and *James R. Howard,* for appellee.

GEORGE ROSE SMITH, J.    This is a suit by the appellants, the four children of W. H. Laney, to quiet their title to a tract of about seventy acres lying near the south edge of the city of Little Rock. They claim title (a) under two tax deeds which their father obtained from the state in 1941 and 1944 and (b) by adverse possession. The appellees, Arkansas Real Estate Company, Inc., and Arkansas Warehouse Corporation, rely upon quitclaim deeds by which they acquired the record title to the land in 1956 and 1957. The chancellor found the tax deeds to be invalid, for want of a good description, and held that the appellants had proven title by adverse possession only to the north seven acres of the tract. In appealing from that decree the appellants insist that they established good title to the entire tract.

The tract is a rectangle, about a half mile by a quarter mile in size, with its longer direction running north and south. A railroad right-of-way runs along the northern boundary and cuts off the northwest corner of the rectangle.

The chancellor's finding that the appellants have acquired title to the north seven acres is amply sup-

ported by the proof and has not been challenged by cross appeal. This part of the land was occupied by tenants of the Laneys for more than ten years, beginning in about 1944. The principal tenant, Bell, lived in a small house on this parcel from about 1945 until his death in 1952. Bell and his successors raised cotton and vegetables during the years of their occupancy. The proof shows that this north seven acres was completely enclosed, the fence along its southern boundary being an interior cross fence that divided the entire seventy-acre tract into two parts.

In this court the dispute concerns the southern part of the tract. The appellants' father, W. H. Laney, kept cattle and horses on this part of the land, though perhaps not continuously, from about 1944 until his death in 1951. Small scattered fields were cultivated from time to time, but not for a continuous period of seven years. The chancellor evidently concluded that the land now in controversy had not been physically occupied, in its entirety, by the Laneys and their tenants for a sufficient length of time to vest title by adverse possession.

We think the chancellor overlooked the fact that, according to the decided weight of the evidence, the parcel now in question was continuously enclosed by fences from about 1943 until about 1953. When this enclosure of the land is considered along with the acts of dominion exerted by the Laneys and their tenants all the elements of adverse possession are established.

Several of the Laneys' former tenants and employees testified in the case. Frank Hardester worked for W. H. Laney for several years. In 1942 or 1943 he helped build the west fence which, together with the older fences, completed the enclosure of the land. After the west fence was built Hardester helped repair the south fence. He testified positively that the entire tract was thereafter completely enclosed by substantial three-wire fences until he left the neighborhood in 1950. One of the appellants, William R. Laney, said that to his knowledge fences were maintained for several years

prior to 1949. His brother, Walter Laney, inspected the tract in 1950 and testified that the land was then completely enclosed. H. W. Brown was familiar with the land from 1951 until 1955 and rented it for part of that time. He said that the land was fenced on all sides until he removed the south fence, apparently in 1953, to provide access to other land that he was renting just south of this tract. There was much other testimony relating specifically to various fences along the four sides of the tract, but we need not detail this proof.

The appellants' abundant testimony is convincingly corroborated by disinterested surveyors whose business it was to know the facts. In 1953 the owners of the Durst land, which adjoined the Laney tract on the east, had their land surveyed by a civil engineer. The ensuing plat showed the greater part of the Laneys' east fence, and the surveyor testified that he walked along their south fence after finding his point of beginning at the southwest corner of their land. Another independent survey, prepared for the highway department in 1958, showed both the east fence and the west fence on the Laney land. Still a third surveyor, employed by the appellants to prepare a plat to be used at the trial, found portions of the east and west fences in 1959, although by then the wire was badly in disrepair.

The appellees' proof falls distinctly short of overcoming the strong case presented by the appellants. The appellees' principal witness was Robert M. Traylor, who, we infer, owns the controlling interest in the two appellee companies. Traylor had known the land since 1943, but prior to 1956 his concern with the property was necessarily casual, for he is not shown to have lived nearby and he did not acquire any interest in the land until 1956. He testified that the land was not fenced during the pivotal decade following 1943. His testimony is contradicted by many witnesses who were more familiar with the land than he was and by the strong evidence given by the various surveyors. In like manner the other testimony adduced on behalf of the ap-

pellees is insufficient to rebut the appellants' positive showing of adverse possession for more than seven years.

The decree is reversed and the cause remanded for the entry of a decree quieting title in the appellants and for further proceedings with respect to a sewer line easement claimed by the city of Little Rock.