LANGLEY v. REAMES.

4-7976                                              197 S. W. 2d 291

Opinion delivered November 11, 1946.

*Spencer & Spencer,* for appellant.

*Surrey E. Gilliam,* for appellee.

Holt, J. July 14, 1945, appellee brought this action against his granddaughter, Mary Langley, and George W. Langley, Jr., her husband.

He alleged in his complaint that in early April, 1944, appellants applied to him "for financial assistance in the purchase of a lot and home for defendants (appellants), and induced the plaintiff (appellee) to advance the sum of $700 to pay for the house and lot . . .; that the plaintiff did furnish to the defendants for said purpose the sum of $700 cash and the defendant used the sum of $700 so furnished by the plaintiff to purchase the house and lot . . . on April 6, 1944." The property involved is in the town of Felsenthal, Arkansas.

He further alleged "that it was the intention and understanding between the plaintiff and the defendants that the title in and to said property should remain in the plaintiff until said sum of $700 had been repaid, . . . that, in any event, the plaintiff is entitled to have a lien in said sum fixed and declared against said prop-

erty and to have said lien foreclosed and said property ordered sold to satisfy same."

His prayer was that he have judgment against appellants "and that said judgment be fixed and declared as a lien against the aforesaid property," etc.

Appellants answered with a general denial and endeavored to show that the money which they received from appellee was a gift.

The trial court found that appellants were indebted to appellee in the amount claimed, secured by an oral mortgage, and "awarded judgment for $657 against defendants (appellants), together with interest up to date at 6 per cent., and a lien will go against the property if not paid within thirty days," etc.

This appeal followed.

Appellants earnestly argue that the money advanced by appellee to them was a gift and not a loan, was so intended at the time, and that the court erred in holding otherwise.

The essential facts were: Mary Langley was appellee's granddaughter and he was very much attached to her, in fact had practically reared her. About April 1, 1944, appellants came to appellee and requested that he advance $700 to them to be used in the purchase of a home which they had selected in the town of Felsenthal, Arkansas. Appellee went with them to the property, and after looking it over, expressed the opinion that it was well worth the money, advanced the $700 with which appellants bought the property for their home and they have lived in it since its purchase. The deed dated April 6, 1944, was made to appellants. Shortly after the purchase, appellants paid appellee $100 on the money advanced, but made no further payments although requests for payments were made by appellee.

Appellee testified that the money so advanced was a loan and not a gift and that he "didn't have the money to give them or to give anybody," and further that when

he advanced the money, he said to appellants: "I am letting you have this money to pay for that place, and I want the place to stand good for the money," and that Mary's husband said: "All right, Pa, we will pay you back every dollar of it."

May 8, 1945, appellee sent a letter to appellants in which he said: "Dub and Mary, now I am asking you both in a kind way, when are you going to try to pay some on the money that you borrowed from me over a year ago? I think I have been very liberal on you all, and it seems that you still put me off. I did not put you off when you came to me. Now I do not have anyone to help me, so, therefore, I would like to have some pay out of you all for that very hard cash."

The following day, May 9th, Mary answered this letter, using this language: "Dub didn't get that money from you. It was me, not him. . . . We were intending to pay you all of it this summer, but being that you have to listen to someone else, we will just pay you a little when we get ready. As far as you collecting that money, you couldn't get a penny, for you have nothing to even show that I got any from you. And you certainly didn't have any eye-witnesses that you gave me any. . . . I told you I would give you some money. We had some last summer and you wouldn't have it. You said that we might need it. So just keep still a little while longer. I wouldn't beat you out of a penny for nothing, so you needn't be growling about it. But I don't think it is all your fault. I think someone else is meddling where they have no business. Well, I don't care what you decide to do about it, because you can't get it until we get the money to pay you." We think this letter of Mary's clearly shows that appellants are indebted to appellee as he claims. It is significant that nowhere in this letter does she claim that the money advanced was a gift and not a loan.

It appears undisputed that the money which appellee advanced was to be used by appellants specifically as the purchase money for a home, was so used, and appellants have lived in this property since its purchase.

In these circumstances, we think appellee was entitled to a lien on the property involved here for the purchase money which he advanced to appellants.

In *Starr* v. *City National Bank,* 159 Ark. 409, 252 S. W. 356, this court said: "This court is committed to the doctrine that borrowed money for the specific purpose of buying a home and so used is 'purchase money' within exception to art. 9, § 3, of our Constitution, for which a lien may be declared on the property purchased (*Acruman* v. *Barnes,* 66 Ark. 422, 51 S. W. 319, 74 Am. St. Rep. 104), but is not 'purchase money' within the meaning of said section, for which a purchase money lien may be declared on the property purchased, if a general loan," and in the *Acruman* v. *Barnes* case, *supra,* it is said: "Article nine, § three, of the Constitution of 1874 provides that 'the homestead of any resident of this state, who is married or the head of a family, shall not be subject to the lien of any judgment or decree of any court or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens.' . . . In some courts it is held that money loaned to purchase property cannot be considered purchase money as between the lender and borrower, but only between the vendor and purchaser of the property. *Heuisler* v. *Nickum,* 38 Md. 270. But, in our opinion, the weight of authority and the better reason is that money borrowed of a third person with which to purchase a homestead, when it is understood between the lender and the borrower that it is to be used for that purpose, and it is so used, is purchase money, *Allen* v. *Hawley,* 66 Ill. 164; *Hamrick* v. *People's Bank,* 54 Ga. 502; *Carr* v. *Caldwell,* 10 Cal. 385, 70 Am. Dec. 740; *Nichols* v. *Overacker,* 16 Kan. 54. 'Things bought with borrowed money, borrowed with the avowed purpose of buying them, are not exempt as against the lender.' Waples, Hds. & Ex. 911; *Houlehan* v. *Rassler,* 73 Wis. 557, 41 N. W. 720. 'The homestead is liable for money borrowed to pay a balance due on the purchase price.' *White* v. *Wheelan,* 71 Ga. 533; *Middlebrooks* v. *Warren,* 59 Ga. 230. 'One who loans money to enable another to purchase a homestead cannot be defeated in collecting it

by the claim of homestead immunity upon the part of the borrower.' "

While the chancellor based his decree on what he termed an oral mortgage, since we try the cause *de novo* on the record made below (*Culberhouse* v. *Hawthorne,* 107 Ark. 462, 156 S. W. 421), and the court reached the right result, we prefer to uphold the decree on the ground that the great preponderance, if not the undisputed evidence, shows that appellee advanced the money to appellants for the specific purpose to buy a home, and that it was so used. Accordingly, the decree is affirmed.

GRIFFIN SMITH, C. J., concurs.