SHARUM v. TERBIETEN

5-3953                                           406 S. W. 2d 136

Opinion delivered September 19, 1966

*Franklin Wilder,* for appellant.

*Hardin, Barton, Hardin & Jesson,* for appellee.

GUY AMSLER, Justice. This unfortunate controversy involves a property line dispute between a brother and sister. It is the type litigation that members of our Christian society should zealously discourage. As best we can

determine from the record the area in dispute is some 30 to 35 feet in width and 210 feet in length.

Appellant Lawrence Sharum is a son of U. G. Sharum and appellee Madalene Terbieten (nee Madalene Sharum) is appellant's sister. In 1940 the father of these litigants owned considerable real property adjacent to the intersection of Massard Road and Highway 22 in the Greenwood District of Sebastian County. On May 13, 1940, Father Sharum and his wife conveyed, as a gift, to his son Lawrence a plot of land described as follows:

> "Beginning at the center line of State Highway 22 where the East Boundary line of said Massard Road crosses Highway 22 and running thence south along the East Boundary line of said Massard Road 210 feet, thence east 210 feet, thence north to center line of Highway 22, thence west along center line of Highway 22 to place of beginning, containing approximately one acre, and being a part of the NW quarter of the SE quarter of Sec. 30, T8N, R31W."

On the same date the parents conveyed that part of the NW¼ SE¼ of Sec. 30, South of Highway 22 as a gift to their daughter Madalene "except approximately one acre in the NW corner of said tract deeded to Lawrence Sharum, containing 28 acres more or less." The grantors retained a life estate in this tract.

U. G. Sharum died in March of 1949 and his widow passed away in August of 1955. Appellee then took possession of her property. Thereafter according to some of the testimony there were efforts on the part of appellee's husband, Leo Terbieten, and appellant Lawrence Sharum to determine the exact location of the line between the property of appellant and appellee. If Mrs. Terbieten had any part in these endeavors the record fails to reveal it. The contention of appellant is that it was intended that he should have a full acre exclusive of Highway 22 right of way. Appellee on the other hand

contends that appellant is entitled to take according to the plain wording of his deed.

Appellant filed suit praying a reformation of the deeds executed to him and his sister by their parents and title to 1 acre exclusive of Highway 22 right of way be quieted in him. The trial judge very properly held that "one dollar and love and affection" conveyances are not subject to reformation under our decisions: *Wells* v. *Smith,* 198 Ark. 476, 129 S. W. 2d 251; *Kaylor* v. *Lewis,* 212 Ark. 785, 208 S. W. 2d 185; *Ketchum* v. *Cook,* 220 Ark. 320, 247 S. W. 2d 1002; and *Lathrop* v. *Sandlin,* 223 Ark. 774, 268 S. W. 2d 606.

The cause was dismissed for want of equity and this appeal was perfected in due course.

Counsel for appellant concedes that he was not entitled to reformation of the deeds but contends that the chancellor erred in not passing on the question of adverse possession and granting appellant title to a full acre outside the right of way of Highway 22 under the 7 years statute. It is true that the trial judge did not mention "adverse possession" in his findings or decree, however under our well established rule we try chancery cases on the record and dispose of them. Whether the chancellor makes a finding or bases his decision on an erroneous conclusion does not preclude our reviewing the case "de novo." *Culberhouse* v. *Hawthorne,* 107 Ark. 462, 156 S. W. 421; *Langley* v. *Reames,* 210 Ark. 624, 197 S. W. 2d 291.

Adverse possession is a fact question and our holding requires a brief review of the evidence. Appellant says he took possession of one acre, exclusive of the Highway 22 right of way following the gift from his father; that he leased an acre for a billboard; executed a pipe line lease to the gas company; paid taxes on an acre (this was described as pt. 30-18-31); set up some corner posts and cut the sprouts and weeds from what he claimed as his one acre.

The descriptions used in the 2 leases executed by appellant were identical with the one contained in the deed from his father; the billboard was erected on land entirely within the description contained in his deed; he made no effort during his father's lifetime to get a correction deed and he never fenced the acre he now contends belongs to him.

A strong indication of the uncertainty in appellant's mind regarding the correct boundary is the fact that in May of 1965 he employed a surveyor to establish the line. If he had through the years been claiming up to a certain line he didn't need an engineer to locate that boundary.

Of more than passing significance is the fact that the engineer employed by appellant first made a survey that conformed with the description contained in appellant's deed from his father. Appellant was dissatisfied with that survey and had the surveyor tear it up and prepare one based on points and boundaries supplied by appellant. The surveyor testified that his survey did not conform with the description contained in the Lawrence Sharum deed.

The wife and son of appellant corroborated his testimony regarding what he claimed to be hostile acts of adverse possession in practically every detail.

Leo Terbieten, husband of appellee, who seems to have kept track of happenings connected with the boundary dispute testified that before Mr. U. G. Sharum (the father of litigants) died he (the father) laid off the acre that was deeded to Lawrence Sharum and ''told me to stay off of it, and I did.''

Appellants claim that appellee's husband constructed a line fence in 1952 and thereby fixed a boundary between the parties. The husband explains this by saying that he undertook to place the fence on the line pointed out to him by Mr. U. G. Sharum, (which line

was confirmed by a survey made by H. A. Peck, a civil engineer) and that the men he had doing the work were stopped by Lawrence Sharum. He says he then had a temporary fence constructed further to the south and left about 3 acres open on Lawrence Sharum's side of the fence. Terbieten testified ''I just built a temporary fence so we could use it and cut the hay—it is going to be there until I find out where to put a permanent fence.'' He said they continued to cut hay on the north side (Lawrence Sharum's side) of the fence several years after the fence was built.

Worthy of note is the fact that appellant does not claim title to all the land up to this fence nor does he contend that the fence marks the boundary line between the parties. The implication appears to be that the construction of this temporary fence was some sort of an admission adverse to appellee's contention. We accept the happening as a temporary measure designed for use until a troublesome problem could be resolved.

Appellant claims that sometime after his father's death in 1949 he erected posts at the corners of the one acre he claims. However, if these posts were erected (which is disputed) there is no evidence that his sister or anyone else had knowledge that appellant claimed them as marking the line between the adjoining ownerships. Regarding this boundary dispute appellant testified ''I have never had any words with him'' (referring to his brother-in-law) and as to his sister he said ''I have had no words with my sister at no time.'' In *Lollar* v. *Appleby*, 213 Ark. 424, 210 S. W. 2d 900, we said:

''While, in such cases, to constitute an adverse possession, there need not be a fence or building, yet there must be such visible and notorious acts of ownership exercised over the premises continuously, for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or that his knowledge may be presumed as a fact. * * *''

Considering the testimony as a whole we are unwilling to say that the chancellor's ruling on the case is not supported by a preponderance of the evidence. The decree is therefore in all respects affirmed.

BLAND, J., disqualified.