JAMES R. LONG, T. B. JACKSON AND
THORP THOMAS *v.* LEO MABRY

5-5356                                       470 S. W. 2d 319

Opinion delivered June 14, 1971
[Rehearing denied October 4, 1971.]

*Thorp Thomas, Fred A. Newth, Jr., Rose, Barron,
Nash, Williamson, Carroll & Clay;* By: *John Haley,* for
appellants.

*House, Holmes & Jewell;* By: *Robert L. Robinson
Jr.,* for appellee.

ROBERT L. JONES, JR., Special Justice. The appellants and the appellee entered into an agreement, dated July 28, 1966, under the terms of which appellee agreed to advance the sum of $5,000.00 "for administrative and printing costs to form a non-profit corporation to be known as National College Award Foundation." The duties and obligations of the appellants are not specifically stated, but it is implied that they would furnish services rather than money as their part of the investment. The appellee actually advanced $4,750.00. The Agreement further provided a method whereby the appellee was to receive back all of the money he had invested out of fees from the sale of memberships. The "non-profit corporation" was formed, but never became operational and appellee filed suit against appellants for rescission of the Agreement, alleging that there was a failure of consideration. Later an amended complaint was filed also alleging violations of the Arkansas Securities Act, Act 254 of 1959, Sections 1, 7, 14 and 22. The trial court found that appellee was entitled to rescission, ordered restitution of the sum of $4,750.00, plus court costs, from which order the appellants bring this appeal.

There is very little dispute in this case about the facts. After the written agreement was entered into, on July 28, 1966, the appellee advanced the sum of $4,750.00. $2,250.00 was paid to John B. May to reimburse Mr. May for money that he had paid to Mr. Jackson and Mr. Long as an investment in the National College Award Foundation. A second check was issued by the appellee to Mr. Jackson and Mr. Long in the amount of $2,500.00. It is obvious from the testimony of all of the parties that all four of the persons connected with this transaction expected to make a profit. Appellee was to get his money back first, then the appellants and the appellee were to share equally in the profits. It also appears obvious that all of the parties knew that there was some question as to the legality of the proposal. The appellee inquired of Mr. Jackson how it was possible to make a profit out of a non-profit corporation, and Mr. Jackson told him that they would do it the same way that private clubs operate. The appellee ad-

mits that he was told that it would be necessary to secure the approval from either the Attorney General's Office or the Securities Commissioner's Office before the corporation could commence business; he further admits that he was not led to believe that such approval had already been secured before he entered into the contract.

The non-profit corporation was formed, and Mr. Thomas attempted to secure the approval of the State Securities Commissioner. The Securities Commissioner failed to find any merit in the program for the public of Arkansas, and so advised Mr. Thomas by letter. After Mr. Thomas failed to obtain the approval of the Securities Commissioner, he did some further legal research and found that under Ark. Stat. Ann. § 67-1248, there is a specific exemption for any corporation organized not for profit, but exclusively for educational purposes. Based on this exclusion, Mr. Thomas told Mr. Long and Mr. Jackson that in his opinion, they could go ahead without the approval of the Securities Commissioner. An effort was also made (through an official authorized to receive an opinion from the Attorney General) to obtain an opinion from the Attorney General as to the legality of the plan but no such opinion was obtained.

There is testimony that by this time, the money advanced by appellee had been spent. It also appears that the appellants were reluctant to proceed without the approval of the Securities Commissioner or the Attorney General, and for these reasons, the matter became dormant, which resulted in the filing of this action for rescission by the appellee.

It is a well-established rule that this Court hears and determines appeals from chancery courts *de novo*. As stated in *Sharum v. Terbieten*, 241 Ark. 57, 406 S. W. 2d 136 (1966):

"Whether the Chancellor makes a finding or bases his decision on an erroneous conclusion does not preclude our reviewing the case 'de novo.' *Culber-*

*house* v. *Hawthorne,* 107 Ark. 462, 156 S. W. 421;. *Langley* v. *Reames,* 210 Ark. 624, 197 S. W. 2d 291."

1. *Was there a failure of consideration?* It is not contended that any of the appellants made false or fraudulent representations to the appellee to induce him to invest $4,750.00. Rather, appellee contends that there was a failure of consideration on the part of the appellants. The basis of this contention is that appellants made certain promises which they failed to fulfill. The written agreement between the parties contains no promises on the part of appellants. However, the undisputed oral testimony is that appellants would seek to obtain the approval of the Securities Commissioner, or an opinion from the Attorney General that "memberships" in the Foundation could be sold without being registered as a security under the provisions of the Arkansas Securities Act (Ark. Stat. Ann. § 67-1235, et seq.). Appellants formed the corporation and made an effort to obtain the approval of the Securities Commissioner, and an opinion from the Attorney General, but were unsuccessful on both counts. Accordingly, it appears that the appellants did what they agreed to do, and that there is no failure of consideration.

2. *Were the parties in pari delicto?* Even if there was a failure of consideration, the appellee is not entitled to rescission of the Agreement and to obtain restitution if he was *in pari delicto* with the appellants. It is well settled that courts of equity will not aid parties to an illegal agreement, but will leave the parties where it finds them.

In *Williams* v. *Wilson,* 181 F. Supp. 351 (1960), Judge Henley correctly stated the law of Arkansas on this point as follows:

"It is a settled principle of law in Arkansas that courts will not enforce illegal bargains or those that are *contra bonos moros,* and that where the parties to such bargains are *in pari delicto,* the law will leave them where it finds them. *Womack* v. *Maner,*

227 Ark. 786, 301 S. W. 2d 438, 60 A. L. R. 2d 1271, and cases there cited."

All of the parties connected with this transaction knew from the outset that the legality of the undertaking was questionable and the appellee admits that he was told that it would be necessary to obtain the approval of the Securities Commissioner or an opinion from the Attorney General that registration under the Arkansas Securities Act was not necessary. Knowing that such approval had not been obtained, he was willing to risk his money on the possibility of making a profit. All of the parties are therefore *in pari delicto.*

3. *Was the agreement a security?* Appellee contends that even though the parties are *in pari delicto,* that appellee is still entitled to rescission of the Agreement under the provisions of Ark. Stat. Ann. § 67-1256, if the Agreement entered into between the parties is a "security". We have examined the definition of "security" as contained in Ark. Stat. Ann. § 67-1247 (1), and find that the Agreement between the parties, dated July 28, 1966, was not a "security" within the meaning of the Statute.

It is, therefore, the opinion of the Court that the appellee is not entitled to rescission of the Agreement and is not entitled to full restitution. Appellee is only entitled to an accounting of the funds which were agreed to be spent "for administrative and printing costs". The decree is therefore reversed and the cause remanded to the trial court for the purpose of determining that all of the money advanced by appellee was spent for the purposes provided in the Agreement. The appellee is entitled to a return of any funds that remain unexpended, and is entitled to judgment for any funds spent by appellants for purposes other than "administrative and printing costs". In making such determination, appellants are not entitled to compensation for time expended for the reason that time and services constituted their investment in this venture.

Reversed and remanded.

SMITH and FOGLEMAN, JJ., and MURPHY, S.J., dissent.

BYRD and HOLT, JJ., not participating.