ROSSNER v. JEFFERY.

5-2614                                    354 S. W. 2d 705

Opinion delivered February 26, 1962.

[Rehearing denied April 2, 1962.]

724

*Brooks Bradley,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* by *Wayne W. Owen,* for appellee.

GEORGE ROSE SMITH, J. This case began as a suit by the appellants, the Rossner heirs, to require Jeffery Construction Company to render an accounting under a lease by which the Rossners had authorized Jeffery to remove dirt from a forty-acre tract at a royalty of ten cents a cubic yard. The case became a boundary dispute when Kelton Brown, Jr., an adjoining landowner, intervened and asserted title by adverse possession to part

of the leased land. Jeffery admitted its liability to one claimant or the other and deposited the accrued royalties in the registry of the court. This appeal is from a decree sustaining Brown's claim of title by adverse possession and dividing the royalties in the ratio of the parties' proportionate ownership. The principal question is whether the proof supports the chancellor's conclusion upon the issue of adverse possession.

The common boundary between the two forty-acre tracts runs north and south. Brown, whose land lies to the east, contends that for many years the two parcels were actually separated by a fence that ran southwesterly (instead of due south) from the northwest corner of Brown's tract and thereby enclosed a triangular piece of land that originally belonged to the Rossners. Much of the evidence adduced at the trial related to the existence of this fence.

The decided weight of the testimony shows that the fence existed for some 20 years immediately preceding the institution of this suit. In 1937 a disinterested survey of the general area was made in connection with a drainage proposal. We are strongly impressed by the fact that the map prepared in connection with that survey shows the fence in question, running southwesterly from the section corner to Fourche creek. The continued existence of the fence in 1944 was established by the witness Burrow, who farmed the land in that year. Another witness, Yancey, said that the fence was in fairly good repair when he considered buying the land in 1948 or 1949. Brown's father, who has acted for his son all along, bought the land in 1954 and cultivated it up to the fence every year until the highway department condemned a right of way along the boundary in 1959. H. W. Brown testified that the fence had been in existence for 20 or 25 years. Three witnesses were able to point out the boundary upon an aerial photograph, indicating that the evidence of possession was plainly visible.

There is really no convincing testimony to rebut the strong proof presented by the appellee. Those of the

Rossner heirs who testified had apparently not been on the land for many years and had little personal knowledge of the facts in issue.

Despite the appellee's persuasive proof of adverse possession the appellants insist that the testimony is fatally deficient in that one of Brown's predecessors in title, Kurt Ketscher, died in 1953 and so was not available to testify that he intended to hold adversely to the Rossners during the years of his ownership. It is argued that without Ketscher's testimony Brown did not meet the burden of proving *adverse* possession for seven years.

This contention is unsound. "The 'adverseness' of the possession . . . does not consist alone of mental intentions, but it must also be based on the existence of physical facts which openly evince a purpose to hold dominion over the land in hostility to the title of the real owner, and which will give notice of this hostile intent. A possession, it appears, is adverse to the true owner when it is unaccompanied by any recognition, express or inferable from the circumstances, of the right in the latter." Tiffany, Real Property (3d Ed.), § 1142. "When the evidence tends to show that the possession has all the qualities of an adverse holding, the law presumes that such possession is adverse, absent evidence to the contrary." Thompson, Real Property, § 2544. There is nothing to indicate that Ketscher's open and notorious possession was permissive or subordinate to the Rossners' title. The chancellor was therefore justified in concluding that the necessary hostility of intent existed. If this were not so it would often be impossible to prove adverse possession after the death of the person who had acquired title in that way.

A second contention is that the appellee is estopped to claim title to the triangle in dispute. When the highway department condemned its right of way it paid the Rossner heirs in accordance with the record title. It cannot fairly be said that the failure of Kelton Brown,

Sr., to protest that payment, if indeed he had detailed information about it, so misled the Rossners that Brown, Jr., should be estopped from claiming the royalties from land that was really his.

When the highway department discovered that there was a discrepancy between the true boundary line and the location of the fence it notified Jeffery Construction Company, which held leases upon both tracts. The witness Toliver, an agent of Jeffery, testified that he then informed the Rossners and Brown, Sr., of the discrepancy. Before the fence line was obliterated by the road contractor's bulldozers Toliver, at Kelton Brown's suggestion, caused offset stakes to be erected so that the location of the line could still be determined. The Rossners insist that the elder Brown should have brought the matter to their attention before the bulldozers cleared the area, so that they could inspect the fence line while it still existed. There is no good reason to penalize the appellee because his father was diligent in preserving the evidence of the line. Nothing in the proof indicates that Jeffrey's men, who were apparently disinterested in the controversy, favored either side in the location of the offset stakes. While it is regrettable that the Rossners did not act promptly in the matter and have the satisfaction of verifying the fence line before it was obliterated, this circumstance does not give rise to an estoppel precluding the appellee from claiming what belongs to him.

A final suggestion is that the statute of limitations should not be held to bar two of the Rossner heirs, because they are minors. The statute began to run during the lifetime of their ancestor, who died in about 1949, and consequently it was not arrested by his death. *Bender* v. *Bean,* 52 Ark. 132, 12 S. W. 241.

Affirmed.