CURTIS W. JONES ET AL *v.* G. F. BROWN ET AL, TRUSTEES OF FIRST BAPTIST CHURCH OF BENTON

5-4221                                                   414 S. W. 2d 618

Opinion delivered May 8, 1967

*Martin K. Fulk* and *Griffin Smith,* for appellant.

*Hall & Tucker* and *John F. Lovell, Jr.,* for appellee.

LYLE BROWN, Justice. This is a suit between adjoining property owners to resolve the title to a strip of ground nineteen and two-tenths feet in width. Appellants, Curtis W. Jones, et al., appeal from a decree of the trial court holding that appellees, G. F. Brown, et al, trustees of the First Baptist Church of Benton, and their predecessors in title, had been in adverse possession of the property since 1952.

Some thirty-five years ago Dr. Dewell Gann, Sr., obtained record title to Lots Four, Five, and Six in Block Fifteen, all of which were deeded in 1946 to Dr. Dewell Gann, Jr. A portion of this property was deeded in that year to Dr. C. W. Jones Sr., and another portion was deeded in 1949 to Dr. Jones and his son. The property remaining to Dr. Gann was situated between the Jones land to the south and the First Baptist Church to the north.

In 1952 the Joneses and Dr. Gann joined in a suit to confirm title to their respective interests in the three lots. Included in the suit were fifteen feet of Smith Street to the south and four feet of Market Street to the east, both strips bordering on the Jones property. Those portions of the streets had been abandoned by the city. The confirmation decree purported to set aside Lot Four to Dr. Gann and the balance to the Joneses, all by metes and bounds descriptions.

The present lawsuit had its genesis when the church trustees, appellees herein, decided to purchase the Gann property for the purpose of expansion. It was then discovered that the south boundary line of Lot Four splits a duplex building owned by Dr. Gann and his successors in title. Nineteen and two tenths feet south of this line is an old fence running east and west. Part of this fence was originally erected by one of the Joneses in 1952, and it was extended in 1957 by a tenant of Dr. Gann. If the fence were extended to the east a short distance it would apparently tie into the southwest corner of the duplex.

Dr. Gann died in 1957, and his widow died in 1965. In the latter year the church obtained from the executor of the Gann estate a deed to Lot Four and the easterly 162.6 feet of the north nineteen and two-tenths feet of Lot Five, described by metes and bounds. The latter strip, the subject of the present controversy, is claimed by the church by reason of adverse possession thereof by its predecessors in title, the Ganns. The Joneses, appellants herein, dispute this claim. The chancellor found the disputed strip to have been adversely possessed for more than seven years by the Ganns, and it is this finding which we are asked to reverse. We decline to do so.

The record title of the Joneses is weakened by two significant factors. First, the original plat of Block Fifteen, upon which the various legal descriptions are based, was severed from the original city plat and lost. That was several years prior to this lawsuit. So it is not at all clear exactly where the "true" boundaries are located. Secondly, the surveyor's plat prepared for this lawsuit shows that the church building protrudes into Lot Four, the Gann duplex protrudes into Lot Five, the Jones Clinic straddles the line between Lots Five and Six, and the south wall of another building extends into the closed portion of Smith Street. There was no showing at the trial that anyone, even the Joneses, ever considered the boundaries to split each of these buildings. In fact, Dr. Jones, Jr., recognized the fence as the south line of the Gann property.

The Gann duplex building was some fifty years old and from 1952 to 1965 was occupied by a tenant who paid his rent to the Ganns, with no objection from the Joneses. The balance of the disputed area is effectively enclosed by the fence erected by the Joneses and extended by the tenant. Actual possession of the strip would appear, therefore, to have been established by the church's predecessors in title. See *McNeely* v. *Ballard*, 220 Ark. 736, 249 S. W. 2d 567 (1952); *Miller* v. *Fitzgerald,* 169 Ark. 376, 275 S. W. 698 (1925).

As to the adverse nature of the possession, this case is similar in many respects to *Rossner v. Jeffrey*, 234 Ark. 723, 354 S. W. 2d 705 (1962), where the disputed strip was likewise enclosed within a fence for many years. The contention was there made that the lack of testimony as to the *intent* of the possession, caused by the death of the claimant's predecessor in title, precluded a finding of adverse possession. In response to this argument we said:

> " 'The "adverseness" of the possession . . . does not consist alone of mental intentions, but it must also be based on the existence of physical facts which openly evince a purpose to hold dominion over the land in hostility to the title of the real owner, and which will give notice of this hostile intent. A possession, it appears, is adverse to the true owner when it is unaccompanied by any recognition, express or inferable from the circumstances, of the right in the latter.' Tiffany, Real Property (3d Ed.), § 1142. 'When the evidence tends to show that the possession has all the qualities of an adverse holding, the law presumes that such possession is adverse, absent evidence to the contrary.' Thompson, Real Property, § 2544. There is nothing to indicate that Ketscher's open and notorious possession was permissive or subordinate to the Rossners' title. The chancellor was therefore justified in concluding that the necessary hostility of intent existed. If this were not so it would often be impossible to prove adverse possession after the death of the person who had acquired title in that way."

Such a result in this case is strengthened by the fact that the Joneses, although present at the trial, offered no testimony. This failure to present their version of the facts is significant. In *Saliba v. Saliba*, 178 Ark. 250, 11 S. W. 2d 774 (1928), the lower court instructed the jury that failure to produce evidence under a party's control creates a presumption that it would be unfavorable to him. That instruction was approved by this court.

This uncontested possession by the Ganns for a substantial period of time after the execution by them of the deeds to the Joneses also serves to rebut the presumption that continued possession by a grantor of land deeded to a grantee is subordinate to the title of the grantee. See *Anderson* v. *Burford*, 209 Ark. 452, 190 S. W. 2d 961 (1945), and the many Arkansas cases there cited.

The recognized starting point for metes and bounds descriptions in the involved area is an iron pin at the southwest corner of the courthouse square. That starting point is the basis for the metes and bounds description by which the chancellor made the award to the church. That description places the south boundary line of the disputed property at the fence and nineteen and two-tenths feet into Lot Five as shown on the unofficial plat of Block Fifteen.

Affirmed.