BRADSHAW *v.* DARBY.

4-6134                                        146 S. W. 2d 547

Opinion delivered January 13, 1941.

*A. D. Pope* and *G. E. Snuggs,* for appellant.

*G. R. Haynie,* for appellee.

GRIFFIN SMITH, C. J.   S. A. Doyle executed his deed conveying 84.96 acres of land to F. Dale Darby. Claude and Eugenia Bradshaw, husband and wife, had formerly owned the property and were in possession when Doyle conveyed. The Bradshaws, prior to 1930, mortgaged to

Ouachita County Bank. Having defaulted in paying the obligation secured by the land, there was foreclosure.[1]

Darby's complaint, filed August 29, 1939, alleged that appellants had been unlawfully in possession of the land for more than six months. There was a prayer for $50 to compensate damages, and for possession.

Appellants' amended and substituted answer denied all material allegations. The affirmative defense of adverse possession was interposed.

At the close of the plaintiff's case the defendants moved for a verdict on the ground that the plaintiff had not deraigned title, and had failed to show possession in Doyle or his predecessors in title. Over objections the court permitted the plaintiff to introduce additional testimony, consisting of verified records incident to the foreclosure proceedings of 1929. Thereupon, the defendant again moved for a directed verdict, contending there had been failure to make out a case in ejectment. The motion was overruled.

Claude Bradshaw had lived on the land fifty-eight years, but mortgaged it in 1926. He denied knowledge of the bank foreclosure. Had made a crop every year; also had cut and sold timber and had utilized and sold the farm's produce. None of these acts was questioned. Doyle informed witness he had "taken over" lands belonging to Ouachita Valley Bank, including the estate here contended for. However, there was the contention by Bradshaw that Doyle told him he did not know the Bradshaw lands were a part of the purchase. According to Bradshaw's testimony, Doyle at the time of his purchase and subsequently, said his only purpose was to get back what the property had cost. The witness says he told Doyle he would try to "dig up" the money: "He told me it was my land, but I would have to pay him back what he had in it."

---

[1] England Plunkett, as commissioner in chancery, conveyed to Walter E. Taylor, state bank commissioner, May 22, 1930. Taylor, as such commissioner, and Lawrence E. Wilson as special commissioner, conveyed to Herbert Thompson in August, 1932. In September, 1932, Thompson conveyed to S. A. Doyle. In January, 1939, Doyle conveyed to Darby.

Bradshaw denied he had ever paid rent on the place, or that he had agreed to do so. The land was assessed in Doyle's name after Doyle bought the bank assets. It was contended by Bradshaw that he reimbursed Doyle in the sum of $32. ". . . on the back taxes Mr. Doyle had paid, and [I] told him if it was any more I would pay it later." Taxes amounted to $7 per year.

There was testimony by other witnesses that they understood the property belonged to Bradshaw.

Doyle testified to having acquired the property from Herbert Thompson in 1932. In the fall of the same year he talked with Bradshaw. The witness says he informed Bradshaw that the place belonged to him (Doyle), but that he did not want it, and: "If you will pay me what I have been out on it, you can have it."

Doyle further testified that he had numerous conversations with Bradshaw regarding the transaction. These discussions occurred on an average of once a month, perhaps. There was never any contention by Bradshaw that he owned the land. Each year, except 1938, Bradshaw wanted to rent the place, and offered to execute his note. Doyle declined to accept notes because he regarded them as worthless; also, he wanted Bradshaw to surrender possession.

A. L. Brumbelow was employed by Doyle, and particularly, since 1938, had looked after Doyle's personal affairs. Witness dictated the deed from Doyle to Darby. In 1935 WPA engineers made a road survey. As originally projected, the road would have cut off a part of the porch of the residence occupied by Bradshaw. Bradshaw, in Brumbelow's presence, conveyed this information to Doyle, and asked him to "do something about it." [2]

---

[2] Brumbelow also testified that ". . . Another time [Bradshaw] was talking to [Doyle] about getting up the money to buy the place, [saying] he didn't want the place cut up by a road on the land. Mr. Doyle told him if he would pay him for the place he could move his house. Later, in 1938, when construction of the road was actually begun, he talked with Mr. Doyle in my presence about moving the house—about tearing it down and rebuilding it; moving it farther back. Doyle refused to do so. I discussed the matter with [Bradshaw] at a later date. He wanted Mr. Doyle to furnish him with material for a new roof. At a later time—I can't be sure, but think it was in 1937—I was present when [Bradshaw] got $5 from

The only question submitted to the jury was whether appellants acquired the lands by adverse possession.

*First.* Appellants insist that "if the state of the pleadings and plaintiff's proof in chief be such as to obviate the necessity. of proving adverse possession—if no issue is made on the plea of adverse possession—then there is no necessity of proving it." It is then pointed out that appellee filed his action August 29, 1939, alleging unlawful possession by the defendants for "six months and a day" after demand had been made by plaintiff for possession. From this pleading appellants deduce that there was an admission they had been in lawful possession from May 22, 1930, eight and a half years. Therefore, it is argued, since the amended and substituted answer pleaded adverse possession for seven years beginning May 22, 1930, such allegation is not denied or disproved. Such, it is insisted, was the state of the record when plaintiff closed his case in chief.

We cannot assent to this proposition. Appellee's complaint was an allegation that appellants ". . . were in the unlawful possession of said lands, and have been for more than six months last past and refuse to give possession of the same to this plaintiff after lawful demand made therefor." If occupancy of the property were unlawful, it is difficult to understand how it became lawful and deprived appellee of his right of action merely because it was alleged that occupancy had been unlawful "for more than. six months."

*Second.* It is next insisted that the court should have granted appellants' motion for a directed verdict at the close of all the testimony, on the ground alleged in the footnote.[3]

---

Mr. Doyle out of this check. It was a 'pea' check. That was the year Mr. Doyle had signed a landlord's waiver of rent so that [Bradshaw] could get a merchant to furnish him. The check was made out to both of them. Neither could get it cashed without the other indorsing it. . . . Taxes were mentioned in this way: Mr. Doyle said he didn't get enough out of the land to pay the taxes."

[3] "The testimony is conclusive that the land in controversy was the homestead of appellants, had been so for many years before, and at all times since, the commissioner's deed of May 22, 1930; that appellants have at all times held the land openly, continuously, peaceably and adversely, and they so continued to hold the land for two years and four months before Doyle received his deed on September 8,

The vice of this contention is that there is substantial evidence to show that appellants were informed of their status soon after Doyle acquired title under his deed from Thompson. It is true appellant, Claude Bradshaw, testified he thought his ownership continued, and that his obligation was merely to repay Doyle what Doyle had paid for the property. But it appears conclusive appellants were permitted to retain possession in order to accord them a liberal opportunity to repurchase. At least the effect of payment to Doyle would have been to repurchase, since title had definitely passed from appellants by reason of foreclosure. Doyle unequivocally maintains that continued occupancy by appellants was permissive. There is corroboration by Brumbelow; also by supporting circumstances.

*Third.* Appellants' requested instruction No. 1 was modified; and, as modified, was given. The instruction as requested is shown in the footnote.[4] The proposed instruction presupposes possession of the character mentioned for a period of seven years or more. It then goes on to say that ". . . where title is *so* vested in the adverse claimant, a mere recognition of the title of the former owner does not revest title in such former owner." The trial court correctly eliminated this language because it was abstract.

Proof was directed to the contention by appellee that Doyle had not contracted with appellants for a sale of the property. There is no evidence that he did. Certainly

1932, and thereafter so held the same until the filing of appellee's action herein."

[4] "The court instructs you that the open, visible, continuous, peaceable, exclusive and hostile possession, under claim of title, for the statutory period of seven years operates as a complete vestiture of title, *and where title is so vested in the adverse claimant, a mere recognition of the title of the former owner does not revest title in such former owner;* so, if you find from a preponderance of the evidence in this case that the defendants have been in the continuous possession of the land in controversy for seven years or more before the filing of plaintiff's complaint herein, under claim of title, and that such seven years or more possession by the defendants was open, visible, continuous, peaceable, exclusive and hostile to the claim of plaintiff and his predecessor in title, *a subsequent recognition of plaintiff's title by defendant, without some valuable consideration running from the plaintiff to the defendants, would not revest title in plaintiff,* and you will find in favor of the defendants for the possession of the land in controversy."

Doyle's offer to convey to appellants if they would pay "what I have been out" was not a contract. Although Bradshaw testified that Doyle said "It is your land," the record title was in Doyle, and the expression, at most, could have meant no more than that Doyle was willing to treat the deed as security and permit redemption. If so treated by Bradshaw, the relationship was inconsistent with his claim of adverse possession.

This construction applies with like force to the second italicized wording contained in appellants' requested instruction, which the court eliminated.

The judgment is affirmed.