TALIAFERRO *v.* GAMBLE.

5-1401                                           307 S. W. 2d 884

Opinion delivered December 23, 1957.

*John E. Hooker,* for appellant.

*Coleman, Gantt & Ramsay,* for appellee.

PAUL WARD, Associate Justice. This litigation is over the north and south boundary line between land belonging to appellants on the west and land belonging to appellee on the east. Hereafter we will refer to appellants' land as the "west farm" and to appellee's land as the "east farm". Both farms (insofar as they re-

late to this opinion) are in the north half of section 35, Township 7 South, Range 8 West, in Lincoln County. Bayou Bartholomew runs from near the northeast corner of said half section in a southwesterly direction to a short distance north of the center of said section, and thence in a northwesterly direction. The course of the Bayou is such that the east farm comprises all of the northwest quarter of the northeast quarter and all of the southwest quarter of the northeast quarter lying north and west of the Bayou, and the west farm comprises all the northeast quarter of the northwest quarter and all of the southeast quarter of the northwest quarter lying north and east of the Bayou less 7 acres belonging to the east farm. It is here noted that the 7 acres parcel (described by metes and bounds in the pleadings) lies in the shape of a parallelogram (717 feet north and south and 425 feet east and west) and is bounded on the south by the Bayou and on the east by the north and south line between the northeast quarter and the northwest quarter of said section 35 — the same line which divides the two farms.

Many years before 1940 the west farm was owned by James H. Taliaferro, and the east farm (including the 7 acres) was owned by his brother, Zack Taliaferro. James died testate in 1942, leaving his farm (west farm) to Zack as trustee, with authority to keep it rented and to pay the net income to the deceased's wife and others designated in his will. Zack looked after both farms until December 22, 1944 when he sold his farm (the east farm) to Sam Gamble, the appellee (the sale was to appellee and his wife, in fact,) and at the same time Zack, as trustee, rented the west farm to appellee. Appellee thereupon looked after and cultivated both farms for the years 1945 and 1946. On November 6, 1946 Zack died, whereupon the widow of James, Mrs. Kate Taliaferro, one of the appellants, succeeded him as trustee, and continued to lease the west farm to appellee until the end of 1952.

On May 13, 1953, Mrs. Kate Taliaferro, her 3 nephews and 2 nieces (owners of the west farm) filed a

complaint against Sam Gamble, appellee, in which they described their land substantially as above set out and alleged that appellee ''had taken posession of a part of said property and appropriated for his own use a parcel 150 feet wide east and west extending in length approximately 2,000 feet running north and south along the east side of plaintiff's property . . .'' In answer, appellee pleaded his deed from Zack Taliaferro, setting out the true description, and 35 years adverse possession by himself and his predecessors.

The chancellor, after hearing testimony of several witnesses and the introduction of several exhibits, and after personally viewing the premises, found the issues in favor of appellee; dismissing appellants' complaint. For the reasons set out hereafter, we conclude that the decree of the trial court must be affirmed.

While appellants, in their pleadings, did not rely on adverse possession or an established boundary line, much of their testimony was directed to those issues. Several witnesses, some of whom had worked on west farm and others who were familiar with it, testified that as early as 1924, and for many years thereafter, there was a turn-row which they considered or assumed to be the dividing line between the two farms. It is not shown however that James and Zack ever agreed on a turn-row or any other marker for a north and south boundary line between the two farms. There is no testimony which shows definitely where the turn row is located with reference to the true north and south line, but some witnesses said the turn-row was some 150 feet east of the line claimed by appellee. Other witnesses stated that the turn-row ran close to a bungalow built for Zack Taliaferro, somewhere on the 7 acres parcel of land.

J. H. Gould, a surveyor, made a survey of the west farm in 1953 in an attempt to establish a division line between that land and the land on the west side. He talked with a Mr. Gatlin who had also surveyed the land. One point he located was 183 feet east of the corresponding point located by Gatlin. E. A.

Harris made a survey in 1936 and a blueprint of the map of that survey was introduced in evidence. It seems that one of the chief purposes of this survey was to determine the amount of cultivated land and not to establish boundary lines. Other maps and sketches of the west farm were introduced, but they contain no letters, figures, or markings to which the testimony is related, and therefore are of little assistance to us in arriving at the location of the boundary line in controversy.

Appellee and his wife testified that when they bought the east farm from Zack Taliaferro in 1944. Zack showed them the dividing line between the two farms and that they had occupied to that line ever since. They also stated that the line pointed out to them would, if extended south, run through the bungalow referred to above. Oscar N. Gatlin, an engineer and surveyor of considerable training and experience, made a survey to determine the true north and south line between the two farms. The description of the manner in which he established his beginning and reference corner sounds convincing at least. He stated that the line he established would, if extended south, run through the bungalow mentioned above.

In view of the lack of definite testimony in the record, we think the trial court was justified in finding that appellants failed to discharge the burden of proof which they assumed when they filed their complaint. In reaching this conclusion we rely to some extent upon the fact that the trial court had the opportunity to observe the witnesses while they testified and especially had the opportunity to correlate their testimony with the several exhibits, while we are denied these opportunities. Not only is this true, but the chancellor personally viewed the lands related to the disputed boundary line. In view of all this we cannot say that his findings and final determination are against the weight of the testimony.

Affirmed.

HARRIS, C. J., disqualified and not participating.