MARY ALICE MOORE *v.* ANTHONY-JONES LUMBER COMPANY

5-5939                                               481 S.W. 2d 707

Opinion delivered June 19, 1972 .

[Rehearing denied July 24, 1972.]

*Clifton Bond,* for appellant.

*Dickey, Dickey & Drake,* for appellee.

J. FRED JONES, Justice. This is an appeal by Mary Alice Moore from an adverse decree of the Calhoun County Chancery Court denying her petition to quiet title against Anthony-Jones Lumber Company to 20 acres of Calhoun County land.

Mrs. Moore originally held title to the land through a deed obtained from her father in 1921. In 1931 she mortgaged the land to the Calhoun County Bank to secure a loan in the principal amount of $193. Upon default in the payment of the loan, the bank foreclosed the mortgage on the 20 acre tract and purchased it at a foreclosure sale for the amount of the indebtedness then against it in the total amount of $196. A commissioner's deed dated May 21, 1934, was made to the bank and recorded in the deed records of Calhoun County. On October 14, 1941, the bank sold the land to the appellee, Anthony-Jones Lumber Company, and transferred title to the company by warranty deed which was recorded.

Mrs. Moore, after setting out the above facts in her petition to quiet title, alleged that 10 acres of the land involved is enclosed in fence and has been in cultivation by her for more than seven years, and that the other 10 acres is unenclosed timberland from which she has cut

and removed saw logs and pulpwood and over which she has exercised all the rights of possession and control for more than seven years. By amendment to her petition Mrs. Moore alleged that she had cultivated the 10 acres under fence each and every year after she acquired it in 1921 until 1965, and that she had cut pulpwood from the land in 1932, 1941 and 1956.

The chancellor held that Mrs. Moore had failed to prove title by adverse possession and on her appeal to this court Mrs. Moore relies on the following point for reversal:

> "A mortgagor who retains possession of a parcel of land for a period of more than seven years after a formal mortgage foreclosure proceeding by a mortgage and is not ejected from actual physical possession of the land by the mortgagee can maintain a suit to quiet title by reason of adverse possession against a mortgagee or its vendee."

Mrs. Moore's right to maintain a suit to quiet title by reason of adverse possession is not questioned. The question is whether she sustained her burden of proving such adverse possession as would entitle her to a favorable decree, and we agree with the chancellor that she did not. Mrs. Moore testified at the trial that after the foreclosure and sale to the bank in 1934, she continued to farm the land enclosed by fence until 1963 when somebody "stole the fence." She testified that there were 63 acres in her entire farm under fence and that about 10 acres of the mortgaged land was inside the fence enclosing the 63 acres. She testified that she and her husband and sons cut timber from the land involved to build fences, and for posts and firewood. She testified that her husband, Clayton Moore, died in 1964, and that prior to his death someone would cut the wire fence and pull it down as fast as Mr. Moore would put up new wire. She said she last saw a fence on the property in 1964, and did not know who moved the fence. She testified that she paid taxes on the land until it was sold under the foreclosure decree but has paid no taxes on the property since then. She denied any knowledge of the Anthony-Jones Lumber Company cutting timber

from the land in 1969, but she admits that she saw red paint on the trees when she lived on the land but does not know who put the paint on the trees.

Chester Wood, a second cousin of Mrs. Moore, testified that Mrs. Moore continued to farm the 20 acres and that Mr. Moore cut timber from the land before his death, but does not know what he did with the timber. He testified that some of the old fence posts are still standing and that part of the fence has been pulled down but he does not know who pulled it down or how long it has been down. This witness also testified to the red paint on trees as well as white paint marking boundary lines. He said, however, he did not know who put the paint on the trees or how long it had been there.

William Wood, another cousin of Mrs. Moore, also testified that he was familiar with the 20 acres involved; that a portion of the 20 acres was farmland and a portion was woodland, but he does not know how much was farmland and how much was woodland. He also testified that some of the land was farmed by the Moores until 1963 and that they also cut some timber from the land. He testified that he was on the land about a month ago; that the fence is now down and the land is grown up in trees and brush. He said that he had also seen red paint on trees but had never noticed the paint marks until about a month before he testified.

Mr. I. W. Guthrie, the county surveyor of adjoining Drew County, testified that he surveyed the 20 acres involved at the request of Mrs. Moore; that 11.86 acres of the land involved lies north of the old fence and 8.14 acres lies south of it. He testified that the land south of the fence is timberland and the land north of the fence had a stand of young pine but had formerly been farmland. He testified that the young timber he observed was probably 10 or 12 years old.

Mr. Cecil Nutt, a land surveyor and timber cruiser for the Bearden Lumber Co., testified for the appellee, Anthony-Jones Lumber Company, that he is familiar with the 20 acres involved and that in 1944 he "spotted" some

of the timber on the involved land to be cut by the lumber company. He said that the involved land had been under the company's selective cutting improvement program; that he ran the land lines in 1955 and marked the lines with paint. He testified that the company cut piling timber from the land in 1959, and that in spotting the timber to be cut they used red paint in 1955 and 1969. He testified that he had been on the land a number of times and had never seen anyone on the land or anything growing on it except grass, trees and brush. He testified that from 1943 to 1971 the company kept the land torn up pretty well all the time in their logging operations, and that he did not see Mary Alice Moore on the land. He testified that there were young pine trees on the previously cultivated land and that the trees were 12 to 15 years old. He testified that in 1946 someone, other than the company, did cut timber from the land and that upon his inquiry of Mrs. Moore, she denied knowing anything about timber being cut and denied that her husband cut timber from the land. He said that Mrs. Moore never did indicate to him that she claimed any interest in the land. This witness testified that he paid the taxes on the land for Anthony-Jones Lumber Company from 1947 to 1965, and that Mr. Ed Anthony and Bearden Lumber. Co. paid the taxes after 1965. He testified that he had never seen a house on the property involved.

Mr. Neal Buzbee, a block forester who spots timber and scales logs for Anthony-Jones Lumber Company, testified that he first saw the land involved in 1947 when he helped in surveying the boundary lines. He said he helped cut timber from the land in 1966, and that in 1969 the company cut 92,000 feet of pine and 7,000 feet of hardwood from a 60 acre tract it owned which included the 20 acres involved in this case. He testified that he had never seen anyone cutting timber from the land except Anthony-Jones Lumber Company. He testified that he had never seen Mrs. Moore on the property and that no one had ever made claim of ownership to him adverse to the lumber company. He testified that most of the fence on the property was down in 1947. He testified that the company had cut no timber from the land since 1969, but had done so prior to 1969. He testified positively

that none of the land was farmed after 1947 but that he does not know what it was used for before that. This witness also testified that he had never seen a house of any kind on the property.

We agree with appellant as to the interpretation and applicability of the statutory and case law cited in her brief, but we agree with the appellee that when the law is applied to the evidence in this case, the chancellor's decree is not against the preponderance of the evidence. The law is well settled in this state that in order for adverse possession to ripen into ownership, possession for seven years must be actual, open, notorious, continuous, hostile, exclusive, and it must be accompanied with an intent to hold against the true owner. *Stricker* v. *Britt,* 203 Ark. 197, 157 S.W. 2d 18. To constitute such adverse possession there must be such continuous visible and notorious acts of ownership exercised over the premises for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or his knowledge may be presumed as a fact. Possession which is so open, visible and notorious as to give the owner constructive notice of an adverse claim need not be manifested in any particular manner, but there must be such physical evidence thereof as would reasonably indicate to the owner, if he visits the premises and is a man of ordinary prudence, that a claim of ownership adverse to his is being asserted. *Wallace* v. *Ayres, Excx.,* 228 Ark. 1007, 311 S.W. 2d 758.

We agree with Mrs. Moore's contention that:

"A mortgagor who retains possession of a parcel of land for a period of more than seven years after a formal mortgage foreclosure proceeding by a mortgagee and is not ejected from actual physical possession of the land by the mortgagee can maintain a suit to quiet title by reason of adverse possession against a mortgagee or its vendee."

But even so, such original owner who retains possession still has the burden of proving continuous possession and the adverse nature thereof in a suit to quiet title by reason

of adverse possession. Mrs. Moore cites no Arkansas case on this particular point, but in 38 A.L.R. 2d, [a], p. 349, is found the following:

"In the majority of the cases in which the question has arisen it had been recognized that the mere sale of property upon foreclosure of a mortgage does not in itself so affect the possession of the mortgagor or his successor in interest as to render it adverse to the purchaser or his grantee."

See also *Bradshaw* v. *Darby*, 201 Ark. 670, 146 S.W. 2d 547, and the 1953 Kentucky case of *Justice* v. *Graham*, 246 S.W. 2d 135.

We conclude that the chancellor's finding was not against the preponderance of the evidence in this case and that the chancellor's decree must be affirmed.

Affirmed.