741 F.2d 185
 In re ARKANSAS COMMUNITIES, INC., Debtor in Possession.
ARKANSAS POWER AND LIGHT COMPANY, Appellant,
v.
ARKANSAS COMMUNITIES, INC., formerly known as Arkansas
Community Development Corporation; Westinghouse Credit
Corporation; Horace H. Sewall and Martha G. Sewall, his
wife; L.B. McLeod and Vera B. McLeod; Stanley K. Ross and
Sara C. Ross, his wife; Diamondhead Property Owners
Association, Inc.; Worthen Bank and Trust Company, N.A.;
Frances X. Severtsen and Alice D. Severtsen, his wife;
Edwin B. Schmink and Geraldine B. Schmink, his wife; Union
Planters National Bank of Memphis, Memphis, Tennessee;
Frank H. Surpless and Margaret K. Surpless, his wife;
Harold J. Smith and Layde Smith, his wife; First Federal
Savings & Loan Association, Hot Springs, Arkansas; Mr. and
Mrs. Thurman O. Watson; Mr. and Mrs. Charles Bradshaw; Mr.
and Mrs. Bobby Morgan; Mr. and Mrs. Raymond Hixon; Mr. and
Mrs. Edwin Hoffman; Mr. and Mrs. John A. Eubanks; Mr. and
Mrs. George Wormley; Mr. and Mrs. Thomas J. Power; Donald
G. Heins; Charles Lowery; Mr. and Mrs. Robert L. Rick;
Mr. and Mrs. Harry W. Fogle; Ralph G. and Mildred Grossman;
and Ben T. Guzzo, a/k/a Dennis Mitchell; Mrs. Leo
Brouwers; Thomas G. O'Malley; John E. Meier; and William
J. Jones and Mary H. Jones, his wife, Appellees.
 No. 83-2311.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1984.
Decided Aug. 20, 1984.
 
 Don F. Hamilton, House, Jewell, Dillon, Dover & Dixon, P.A., Little Rock, Ark., for appellant.
 Lisa A. Kelly, R.J. Brown, P.A., Little Rock, Ark., for appellees.
 Before BRIGHT, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Appellee Arkansas Communities, Inc. (ACI) bought some land in Garland County, Arkansas in 1969 and began developing the property as a residential resort. In 1978 a dispute developed between ACI and appellant Arkansas Power and Light Company (AP & L) over the boundary between their properties. AP & L's title is for land in Section 31 and ACI's title is for land in Section 30. Section 30 is directly north of Section 31. Lake Catherine flows across the east-west line which divides Section 31 from Section 30. The parties agree about the location of the line west of Lake Catherine, but they disagree about the line east of Lake Catherine. This disagreement flows from a question about the location of the corner between Sections 29, 30, 31 and 32, all in Township Three South, Range 18 West. Section 29 is directly east of Section 30 and Section 32 is directly east of Section 31. About 9 1/2 acres are at issue.
 
 
 2
 AP & L filed an action for ejectment in state court in 1979. ACI filed a petition in bankruptcy under Chapter 11 in 1980, and AP & L refiled its complaint in federal court.
 
 
 3
 The bankruptcy court[1] appointed a special master[2] to hear the case. After a hearing the master found that AP & L failed to meet its burden of proof in establishing the corner.[3] The master also concluded that ACI had not established ownership of the tract by adverse possession. The bankruptcy court adopted the master's recommendations on both issues. The district court, 33 B.R. 800, affirmed on the corner issue, but reversed on the adverse possession issue. AP & L appeals.
 
 
 4
 It is well-settled under Arkansas law that the location of a boundary line is a question of fact to be determined by a preponderance of the evidence. E.g., Kittler v. Phillips, 246 Ark. 233, 437 S.W.2d 455, 456 (1969); Kieffer v. Williams, 240 Ark. 514, 400 S.W.2d 485, 487 (1966). The burden is on AP & L to establish the line. Taliaferro v. Gamble, 228 Ark. 460, 307 S.W.2d 884, 886 (Ark.1957); Forshee v. Canard, 488 F.Supp. 521, 524 (1980).
 
 
 5
 AP & L argues that so-called "Point 45" is the proper location of the corner. Point 45 is more or less on a continuation of the undisputed east-west line established west of Lake Catherine. AP & L's position was supported by testimony of Earl Lott, a life-long resident of the area, and of William Fletcher, an expert surveyor. ACI claimed that it was impossible to locate the corner and urged that the lost corner be established by use of the "single proportionate" method; use of this method would, according to ACI, put the disputed tract in Section 30. ACI's position was supported by its expert, Robert Watts. Numerous reports, maps, earlier surveys, and other documents are also part of the record.
 
 
 6
 The corner marked in the original government survey, if it can be found, is conclusively established as the proper section corner, regardless of the accuracy of the survey work. Forshee v. Canard, 488 F.Supp. at 523; see Jones, Arkansas Titles Sec. 236 (1935). The problem of locating the disputed corner here was made extremely difficult by inaccuracies and falsehoods in the government survey, conducted in 1837 by one John Hale. Both Fletcher and Watts agreed that Hale's measurements were in most cases inaccurate and, in some instances, simply fabrications. The search for original monumentation was fruitless, though Fletcher did find stump holes at Point 45 consistent with witness trees indicated in Hale's survey.
 
 
 7
 AP & L's evidence is nonetheless to some degree persuasive. And there may be problems with application of the "single proportionate" method that Watts relied upon to establish the corner so as to include the tract in Section 30. See Manual for Instructions for the Survey of the Public Lands of the United States (1973) Secs. 5-20 to 5-29. Moreover, it may be that the master erred in applying the stricter burden of proof set forth in the Manual along with the standard required under Arkansas law.[4]
 
 
 8
 However, even if AP & L had met its burden, that finding would not be dispositive if ACI was able to establish the defense of adverse possession. In view of our conclusion that ACI established its adverse possession, we need not decide whether the master erred in concluding that AP & L failed to establish the location of the corner. Between these two parties, adverse possession is the dispositive issue.
 
 
 9
 Under Arkansas law, "when one is in possession of land, no one may question his claim of ownership except within seven years after the cause of action accrues." Utley v. Ruff, 255 Ark. 824, 502 S.W.2d 629, 632 (1973); see Ark.Stat.Ann. Sec. 37-101 (Repl.1962). Generally, the seven-year period begins when the claimant's possession of the land becomes "actual, open, notorious, hostile and exclusive." E.g., Moore v. Anthony-Jones Lumber Co., 252 Ark. 883, 481 S.W.2d 707, 709 (1972). There must be "physical evidence" of the claimant's possession which "would reasonably indicate to the owner, if he visits the premises and is a man of ordinary prudence, that a claim of ownership adverse to his is being asserted." Id. 481 S.W.2d at 709-10.
 
 
 10
 AP & L filed this suit in 1979, tolling the seven-year period. E.g., Scott v. Hill, 1 Ark.App. 281, 614 S.W.2d 690, 693 (1981). Thus, ACI must have entered into open, visible and notorious possession by 1972 for its adverse possession defense to prevail.
 
 
 11
 The evidence, while not wholly undisputed, clearly showed that surveying work was done on the land in 1969; waterlines were installed in 1970-71; a road was cleared between 1970 and 1974; plats were recorded in 1974 showing development of the disputed area; and several houses were built in 1975. Campers at Camp Couchdale, AP & L's lessee,[5] occasionally hiked and cooked out on the land every summer through 1978.
 
 
 12
 Based on this and other evidence, the district court concluded that the finding of the master that adverse possession had not been shown was clearly erroneous. The district court was as capable of drawing logical inferences from these facts as the master, McGraw Edison Co. v. Central Transformer Corp., 196 F.Supp. 664, 667 (E.D.Ark.1961), aff'd, 308 F.2d 70 (8th Cir.1962), and we agree with its conclusion. Surveying and other development work had begun as early as 1969, and the evidence showed that ACI employees and investors were frequently on the land from that date. Roads were roughed in beginning in 1970, and soon thereafter waterlines were installed. This is the degree and kind of activity and improvements which a visiting landowner would recognize as adverse. Moore, 481 S.W.2d at 709; Kieffer, 400 S.W.2d at 487. AP & L's presence on the land was negligible, consisting only of minimal recreational use by its lessee, and did not interfere with ACI's exclusive possession.
 
 
 13
 We also note that while the district court found it unnecessary to reach the issue of laches, the evidence that AP & L should be estopped from asserting its claim is substantial. See Rabjohn v. Ashcraft, 252 Ark. 565, 480 S.W.2d 138, 142 (1972). In addition to the pre-1973 evidence of adverse possession discussed above, in 1974 ACI filed a plat showing the development of the disputed tract and by 1975 ACI had built three houses on the tract. In fact, AP & L itself began serving these houses with electrical power in 1975. Yet AP & L made no claim to the land until 1978.
 
 
 14
 AP & L's final argument that ACI's possession was not hostile is also without merit. AP & L argues that because ACI intended only to occupy land in Section 30, its possession of land actually in Section 31 could not be adverse. See Ogle v. Hodge, 217 Ark. 913, 234 S.W.2d 24, 25-26 (1950). The "mistaken possession" rule is not applicable in this case. ACI did more than claim only that which it believed it owned; it claimed that it owned the specific tract at issue here. Such a claim qualifies as adverse, and takes this case out of the rule outlined in Ogle and the cases cited in Ogle.
 
 
 15
 We note that our decision may not be the end of the matter. ACI put forth adverse possession as a defense only, and made no counterclaim to quiet its title. Thus, our holding is only that ACI's adverse possession prevents giving relief to AP & L, regardless of where the true corner is.
 
 
 16
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Charles W. Baker, then United States Bankruptcy Judge, Eastern and Western Districts of Arkansas
 
 
 [2]
 Harley E. Cox, Esq., Attorney at Law, Pine Bluff, Arkansas
 
 
 [3]
 The master determined that the corner should be established by single apportionment, see Manual for Instructions for the Survey of the Public Lands of the United States (1973) at section 5-21, but the master did not establish the corner
 
 
 [4]
 The Manual, published by the Department of the Interior, provides that the evidence of a lost corner "should not be susceptible of more than one reasonable interpretation." Section 5-16(2). The master cited this standard and applied it, though he also mentioned and applied the preponderance of the evidence standard which is correct under Arkansas law. While AP & L's evidence was probably susceptible to more than one reasonable interpretation, it may have been sufficient to establish the corner when analyzed under a preponderance of the evidence standard
 
 
 [5]
 Actually, AP & L leased the tract to the Future Farmers of America, which operated Camp Couchdale