*Marvin L. Kieffer,* for appellant.

*Hout, Thaxton & Hout,* By: *Marvin D. Thaxton;*
*Hodges & Hodges,* for appellee.

FRANK HOLT, Justice. This action results from a
boundary line dispute between adjoining landowners.
The appellee, Mrs. Williams, brought an action against
the appellant, Kieffer, to establish her title by adverse
possession and, also, for injunctive relief. The appellant
defended as the record owner of the disputed strip of
land lying between them. He filed a counterclaim against
her for the recovery of a portion of his costs in the
construction of a drainage ditch upon the disputed

strip contending the ditch was beneficial to her lands. The appellant also filed a cross complaint against the appellees, the Gardners, who were his grantors of the land in question. By the cross complaint he sought to require the Gardners to defend the action against him in accordance with their covenant of warranty and, also, asked a judgment against them for his costs and any land shortage that might result from the claim of adverse possession.

The chancellor quieted title to the disputed strip of land in appellee Williams based upon her claim of adverse possession; ordered the appellant to restore certain fences he had destroyed on their common boundary line; enjoined him from further trespass; denied appellant's claim for part of the construction costs of the drainage ditch; dismissed his cross complaint against his grantors, the Gardners, for the recovery of his costs and damages for any land shortage.

For reversal appellant first contends that the decree is against the preponderance of the competent evidence. Appellee Williams purchased her lands in September 1955. Mrs. Williams presented evidence that at the time she purchased her 80-acre tract she personally inspected it and observed an existing fence between her tract of land and the adjoining 80-acre tract later purchased, in 1960, by appellant. It appears this fence had existed for many years having been constructed by the former owner of both tracts. She understood the fence represented the true boundary line. This one-mile north-south fence, separating the two tracts of land, consisted of web wire on its northern portion for approximately one-half mile. The balance, or southern portion, of the fence was partly barbed wire which extended through some woods.

Appellee Williams' evidence was to the effect that when she purchased her 80-acre tract she intended to buy and claim the lands up to the established fences, including the fence in question, that enclosed her lands.

No survey was made. Since her purchase, and no later than December 1955, she or her tenants have physically occupied the land. Appellee Williams or her tenants have continually farmed the cleared land up to the northern half of the fence line. The southern half of the disputed fence line, which runs through the woods, appears to have been repaired to contain and pasture cattle. Part of the time cattle were pastured in this wooded portion. In 1962 appellee Williams cleared her woodlands, including that part on the disputed strip, up to this existing fence. She then farmed this newly cleared land up to the fence line in 1962 and 1963 without objection from anyone.

In December 1960 appellant bought the adjoining 80-acre tract from the Gardners, appellees, who had owned it for four years. The Gardners and appellee Williams acquired their respective lands from the Fowble family. Appellant made some inspection but did not have a survey made when he purchased the land. In 1962, after appellee Williams cleared the south part of her land and the south part of the disputed strip, the appellant had his adjoining timberland cleared by the same contractor. In doing so the fence was largely destroyed. According to appellant, he then had the true boundary line established by a survey in July 1962 and immediately informed Mrs. Williams to that effect. He testified that she then refused to agree to the location of a proposed drainage ditch upon the disputed strip contending she owned the land up to the fence. He removed the remaining part of the north-south fence line about September 1963.

Mrs. Williams claims it was the spring of 1964 when she discovered that he had destroyed the northern half of that portion of the fence which separated their lands. According to Mrs. Williams, it was 1963 when appellant asked her about moving the fence and constructing the proposed joint drainage ditch. This was her first knowledge that he did not recognize the fence line as being the true boundary. About a week later she learned that ap-

pellant had a dragline on the disputed strip of land digging a drainage ditch. This was done on a weekend when no legal action could be taken to stop appellant. A few days later she instituted this action.

Notice of adverse possession may be actual or implied by facts and circumstances such as pasturing stock, the existence of fences, the cultivation of land, or the improvement of land. *Black* v. *Clary,* 235 Ark. 1001, 363 S. W. 2d 528; *McComb* v. *Saxe,* 92 Ark. 321, 122 S. W. 987; *Lollar* v. *Appleby,* 213 Ark. 424, 210 S. W. 2d 900.

Where a landowner is under a belief that he owns certain lands enclosed with his own lands and he exercises dominion over a portion of the enclosed lands adversely to the record owner for the required statutory period of time (seven years) such constitutes an investiture of title to the entire tract. *Laney* v. *Arkansas Real Estate Co.,* 234 Ark. 187, 350 S. W. 2d 911. See, also, *Doniphan Lumber Co.* v. *Case,* 87 Ark. 168, 112 S. W. 208; *Couch* v. *Adams,* 111 Ark. 604, 164 S. W. 728, and *Carter* v. *Stewart,* 149 Ark. 189, 231 S. W. 887.

Appellee Williams bought her land in 1955 when it was already enclosed by a fence which included the disputed strip. She was told and believed the fence constituted the true boundary line. From December 1955 until this action in 1964 she or her tenants have occupied and exerted acts of dominion over the land up to this fence line. During this time she contends that the cleared portion of the land was cultivated up to the northern half of the fence. The southern half of the fence was repaired to contain cattle and some were pastured there part of the time. In 1961 it appears that this fence was recognized by appellant as being the boundary line since Mrs. Williams' permission was secured before appellant and another adjacent landowner jointly constructed a drainage ditch across the south end of her tract including the disputed strip. As previously stated, in 1962 and 1963

she farmed or cultivated up to the southern half of the fence line following her clearance of the timberland.

In *Laney* v. *Arkansas Real Estate Co., supra,* we said: "* * * When this enclosure of the land is considered along with the acts of dominion exerted by the Laneys and their tenants all the elements of adverse possession are established." We are of the view that this expression is applicable and the case is controlling here.

It is well settled that the location of a boundary line is determined by a preponderance of the evidence and on appeal we must affirm unless the holding of the chancellor is clearly against the preponderance of the evidence. *Mason* v. *Peck,* 239 Ark. 208, 388 S. W. 2d 84. From a careful review, *de novo,* of the evidence in the case at bar, we cannot say that the chancellor's findings, favorable to appellee Williams, are against the preponderance of the evidence.

Appellant also contends for reversal that the trial court erred in dismissing his cross complaint against the appellees, the Gardners, for damages resulting from the shortage of land sold to him. We are of the view that the chancellor's holding on this point was also correct. The area in dispute, which was awarded to appellee Williams, amounted to only 2.36 acres or approximately 4% of the acreage conveyed by the Gardners. Their deed to appellant mentioned no acreage. There was no material deficiency in this conveyance and, therefore, there existed no gross mistake or fraud which is necessary to constitute the alleged breach of warranty. *Leonard* v. *Wood,* 233 Ark. 769, 348 S. W. 2d 696 and *Hays* v. *Hays,* 190 Ark. 751, 81 S. W. 2d 926. Further, no proof of damages as to the value of the land shortage was offered.

The decree of the chancellor is affirmed.