632 S.W.2d 432 (1982)
Homer D. CLARK and Ruby Clark, Husband and Wife, Appellants,
v.
James E. CLARK and Anna Mae Clark, Husband and Wife, Appellees.
No. CA 81-236.
Court of Appeals of Arkansas.
March 3, 1982.
Supplemental Opinion on Rehearing April 7, 1982.
*434 Elrod & Lee by John R. Elrod, Siloam Springs, for appellants.
Thomas J. Tucker, Siloam Springs, for appellees.
CRACRAFT, Judge.
Appellants, the Homer Clarks, appeal from a chancery court decree quieting title to a parcel of real estate in appellees, the James Clarks, asserting that the chancellor's finding that the appellees had acquired title to the disputed parcel by adverse possession was clearly against the preponderance of the evidence. We must agree.
The issues in this case are extremely difficult to follow without the aid of the following reproduction of "Petitioners' Exhibit D," a plat of a portion of Block 4 in E. N. Coons Revised Subdivision to the City of Siloam Springs, Benton County, Arkansas.

The surveyed lot lines in that block are shown in solid unbroken lines. It was not disputed that between 1966 and 1968 E. N. Coons, then the owner of Lots 2, 3, 4, 5, 6 and 7 of Block 4, constructed four houses purportedly located on Lots 4, 5, 6 and 7, but all of which lay astraddle of the lot lines as shown on Exhibit D. Coons also constructed a house on Lot 2 which occupies the position shown on the exhibit. All of these houses were conveyed by Coons in deeds describing them by lot numbers with reference to the original plat as surveyed. All the parties agreed that their houses were located on the lots substantially as shown on Exhibit D.
Appellees, the James Clarks, the fourth owners in the chain of title from Coons, purchased record title to Lot 4 on November 3, 1977. Appellants, the Homer D. Clarks, the sixth owners in the chain of title from Coons, purchased record title to Lots 2 and 3 on December 6, 1978. After purchasing the property the appellant Homer Clark caused a survey to be made which disclosed the error affecting all of Block 4. After *435 that survey Homer Clark made demand upon James Clark, which was refused. Thereafter the owners of Lots 6 and 7 joined with appellee James Clark in a petition to quiet their titles and reform the various mortgages securing lands on the respective properties. Each asserted that he had always claimed that the boundaries to his property were along the lines roughly equi-distant between and parallel to the houses, and that each had acquired title by adverse possession for a period of more than seven years. The lot lines contended for are shown on the attached plat by the broken or hatched lines.
The owner of Lot 5 was made defendant along with appellants. The appellants, the Homer Clarks, agreed that the appellees, the James Clarks, should be decreed to be the owners of that portion of Lot 3 on which their residence and rear concrete patio were physically located but counterclaimed to evict the appellees from any other portion of Lot 3.
During the course of the trial the owners of Lots 5, 6 and 7 consented to the entry of a decree realigning their boundary lines as prayed in the petition and the case was tried solely on the issue of the boundary line between appellants' Lot 3 and appellees' Lot 4.
After hearing evidence the chancellor, with the consent of the parties, made a personal inspection of the property. He thereafter filed written findings of fact and conclusions of law in which he found that there were no monuments, markings or physical evidence of any kind showing boundaries along the lines of adverse possession claimed by the appellees and that the backyard areas of both residences merged into one another without any physical indications of either the platted boundary line or the purported boundary line. He did find, however, that the value of the appellees' property would be substantially diminished if the property line in question remained as platted, and that it would be grossly inequitable to substantially destroy the value of the property by resolving the issue in the manner requested by the appellants. He specifically found that when the appellant, Homer Clark, had purchased his property the north line was shown to him to be generally in accord with the line contended for by the appellee, James Clark, and "thus decides for James Clark on equity."
The chancellor further found that as Homer Clark had agreed that the portion of Lot 3 actually occupied by appellees' residence should be vested in appellees by adverse possession, the only issue to be determined was what additional portions of Lot 3 the James Clarks and their predecessors had acquired by actual adverse possession. The chancellor found that the use and dominion over the balance of Lot 3 used for backyard area exercised by the James Clarks and their predecessors in title for more than seven years was such as to vest title in them by adverse possession to all of Lot 3 lying north of the hatched line on Exhibit D and entered a decree accordingly.
While this court reviews proceedings in chancery cases de novo we do not reverse the decision of a chancellor unless findings are clearly erroneous and clearly against the preponderance of the evidence. Rule 52, Arkansas Rules of Civil Procedure; Andres v. Andres, 1 Ark.App. 75, 613 S.W.2d 404, 409 (1981).
Applying this standard of review we first address the chancellor's finding that the value of the James Clark property would be substantially diminished if the property lines in question remained as platted and that it would be grossly inequitable to substantially destroy the value of that property by resolving the issues in the manner requested by appellant. We determine these findings and conclusions to be erroneous for at least two reasons: First, there was not a scintilla of evidence from any witness as to the effect an adverse decision would have on the value of either property. While personal inspections of the property are permissible and proper as an aid to better understanding by the chancellor of what the witnesses had testified to, such views are limited to that purpose and a judge's personal observations on the site are *436 not themselves evidence of facts. Mitcham v. Temple, 215 Ark. 850, 223 S.W.2d 817 (1949). Second, the chancellor does not state what rule of equity he relied upon in determining that a record title may be divested because it is more financially advantageous to one party or to the other that this be done. No such rule has been cited to us and we find none applicable to the circumstances presented by this record.
There is authority from sister states that in a proper case a court may balance hardship and equities and grant appropriate relief in cases involving the erection of costly structures which in part encroach on a neighbor's land. The rule is not applied merely because it would be inconvenient or expensive to remove the structure but only where the hardship of removal is grossly disproportionate to the hardship to the plaintiff if the structure is permitted to remain. That rule, however, is limited to encroaching structures. It does not, and cannot, provide a means for eminent domain for private purposes to alleviate other inconveniences or hardship. Tauscher v. Andruss, 240 Or. 304, 401 P.2d 40 (1965). Appellants made no claim that the structure should be removed. To the contrary, they consented that title to the area occupied by their dwelling be quieted in appellees.
It is obvious to us from his findings and conclusions that the chancellor sought to reach what he considered to be an equitable result. While this is, and should be, the goal in all equitable proceedings, it can only be reached within the limits of equitable jurisprudence. While there must be a remedy for every wrong, the wrongdoers causing or contributing to the dilemma of these parties are not before the court. The appellants are wholly innocent as to any acts bringing about this situation or which would raise equitable defenses of laches or estoppel. On the other hand the appellees might have avoided the dilemma in which they find themselves by simply having caused a survey to be made prior to the time of their purchase. Upon the evidence presented by this record both parties stand at least equally innocent of blame or guilty knowledge. Consequently the maxim that when the equities of the parties are equal, the legal title must prevail applies with all its force.
Our cases have been uniform in setting out six distinct and necessary elements which an adverse claimant must show before his possession will ripen into ownership. They are that the possession be 1) actual, 2) visible and notorious, 3) distinct and exclusive, 4) of a hostile character, 5) accompanied by an intent to hold adversely against the true owner, and 6) for a period of seven years' continuous duration. Potlach Corp. v. Hannegan, 266 Ark.App. 847, 586 S.W.2d 256 (1979).
The first five elements deal with the required nature and extent of the possession. Proof as to those factors may vary and must be measured by a reasonable view as to the location and character of the land itself. It is ordinarily sufficient if the acts of ownership are of such a nature as one would exercise over his own property and would not exercise over that of another. The acts must amount to such dominion over the land as it is reasonably adapted to and under circumstances as would put the true owner on actual or constructive notice of an adverse claim. Those acts of control which might constitute sufficient dominion and notice as to one tract might not be held sufficient in another case. Cooper v. Cook, 220 Ark. 344, 247 S.W.2d 957 (1952).
The extent of required possession also may vary in accordance with the circumstances. One who enters adversely under color of title and actually possesses any part of the tract is deemed to have constructive possession of the entire area described in the document constituting color of title. St. Louis Union Trust Co. v. Hillis, 207 Ark. 811, 182 S.W.2d 882 (1944). Where one enters adversely upon an enclosed tract his possession of any part thereof is constructive possession of the entire enclosure. Kieffer v. Williams, 240 Ark. 514, 400 S.W.2d 485 (1966). Where, as here, one enters with neither color of title nor enclosure he is unaided by constructive possession *437 and his claim is limited to that area over which he maintains actual pedal possession. DeClerk v. Johnson, 268 Ark. 868, 596 S.W.2d 359 (1980).
However, the sixth element permits no variation. The adverse possession must be maintained for a period of seven full, consecutive years. To constitute effective adverse possession the possession must be continuous for the full period. If there is a break in the continuity of the adverse holding the period of limitations begins anew. Utley v. Ruff, 255 Ark. 824, 502 S.W.2d 629 (1973); Brown v. Hanauer, 48 Ark. 277, 3 S.W. 27 (1886).
The burden was upon appellees to prove by a preponderance of the evidence that they actually possessed and occupied the disputed area for seven consecutive years under the prescribed circumstances. The finding of the chancellor that he had sustained that burden was clearly erroneous.
The appellees introduced evidence by the first occupant of the dwelling located partially on Lot 4 as to certain isolated acts of dominion alleged to have been exercised by him over the disputed area during the one year period that he resided there in 1967-68. The appellant testified to certain acts of dominion exercised by him over the disputed area subsequent to his acquisition of the property on November 3, 1977, and prior to the commencement of this action in 1980. The record is totally silent as to what dominion was exercised by whom over the disputed area for the intervening period between 1968 and 1977. In this time period appellees' Lot 4 changed hands three times while appellants' Lots 2 and 3 changed ownership 5 times.
While we are not convinced that the acts testified to by the appellees during that two year period were actual, open, notorious, exclusive, or hostile, it is certain from the record that there was no proof whatever that such acts were continuous for a period of seven years. The proof was limited to the two year period of occupancy maintained by the appellees immediately preceding commencement of the action. As far as this record discloses the dwelling houses, as well as the disputed area, might have been unoccupied during the entire period between 1968 and 1977. There is no proof to the contrary.
However, as appellants have consented to the entry of a decree vesting title in appellees to that part of Lot 3 on which their dwelling and patio is located, so much of the decree appealed from as vests title to that area in appellees is affirmed. The cause is reversed and remanded for such proceedings as may be necessary or required for entry of a decree consistent with this opinion.
Affirmed in part and reversed and remanded in part.

SUPPLEMENTAL OPINION
In our opinion in this case delivered on March 3, 1982, we found from a review of the record that the evidence did not support a finding that the appellees had acquired the entire area in dispute by maintenance of hostile dominion over it for the required period of time. We reversed the chancellor's finding in that regard. However, the chancellor in his findings stated that the appellants "agreed that the James Clarks should be decreed to be the owners of that portion of Lot 3 on which their residence and rear concrete patio are located." We affirmed that part of the decree which vested the "residence and rear patio" in appellees and remanded the cause for further action by the chancellor as the record was not sufficiently developed for us, on trial de novo, to determine on what part of Lot 3 these two items were actually located.
On petition for rehearing the appellees point out to us that the stipulation of disclaimer by the appellants was broader than that recited by the chancellor in his finding and referred us to the transcript where that stipulation appears. We determine that it was broader. The appellants disclaimed any ownership interest in the James Clarks' actual house or any part of the patio "or extensions of his house that *438 might come over on to Lot 3." In their petition for rehearing the appellees contend that that stipulation also covered an attached garage, access to a septic tank system, a driveway and overhanging eaves. As it appears from the record that the appellants have expressly disclaimed any interest in, and consented to the entry of a decree vesting title in appellees to, that part of Lot 3 on which the house, patio and extensions of the house are located, we modify our opinion to affirm so much of the decree as would vest those interests in the appellees. The cause is reversed and remanded for such further proceedings as may be necessary or required to determine what extensions of the house are to be included in the stipulation of disclaimer and entry of a decree consistent with this opinion as so modified.