Jerry HICKS and Mildred L. Hicks *v.* Paul F. FLANAGAN, Barbara Sue Flanagan, Larry Smith and Mrs. Larry Smith

CA 89-338                                               782 S.W.2d 587

Court of Appeals of Arkansas
Division II
Opinion delivered January 17, 1990

*Batchelor & Batchelor*, by: *Fines F. Batchelor, Jr.*, for appellants.

*James C. Haaser*, for appellees.

GEORGE K. CRACRAFT, Judge. Jerry and Mildred Hicks appeal from a decree of the Crawford County Chancery Court quieting appellees' title to a disputed strip of land. We find sufficient merit in one aspect of the appeal to warrant modification and affirm the decree as modified.

The parties are adjoining property owners. Appellees Flanagan own lots three and four of Block AD, Galloway Addition to the City of Alma. Appellees Smith are in possession of this property and are purchasing it from the Flanagans under an installment land contract. Appellants own lots five and eight, the first of which adjoins appellees' property on the south. These properties were separated for at least forty years by a fence running east and west. Appellees' property and appellants' lot five are bound on the east by a dedicated, but unopened, alley which runs north and south. The alley lies between appellants' lots five and eight and borders lot eight on the west. It was not disputed that appellees and their immediate predecessors considered the fence to be the correct boundary between the properties, and have exercised dominion over the disputed strip since 1946.

When appellants purchased their property in 1985, a survey established that the true boundary between the properties was approximately eleven feet north of the existing fence. When appellees Smith refused to remove the fence, appellants brought this action for an order compelling them to remove it. Appellants alleged that appellees' fence encroached not only upon their lots, but extended into the alley owned by the city on which appellees were maintaining a barn. Appellants additionally sought an order requiring appellees to remove the encroachment from the alley. The chancellor found that appellees had acquired title as against appellants to the entire disputed strip by adverse possession, including that part located in the alley.

■■ Appellants first contend that the chancellor erred in finding that appellees had acquired title to their property by adverse possession. In order to establish title by adverse possession, appellees had the burden of proving that they had been in possession continuously for more than seven years and that their possession was visible, notorious, distinct, exclusive, hostile, and with the intent to hold adversely against the true owner. *Clark v. Clark*, 4 Ark. App. 153, 632 S.W.2d 432 (1982). The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over his own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. *Cooper v. Cook*, 220

Ark. 344, 247 S.W.2d 957 (1952); *Clark v. Clark, supra.*

Appellants do not contend that appellees were not in open possession, exercising exclusive dominion over the property, but argue that appellees' possession was without the requisite intent to hold adversely to the true owner. They first argue that appellees' possession could not be considered adverse because on cross-examination appellees and two of their immediate predecessors testified that they had no intention of claiming anyone else's property and intended to claim only what was their own. Appellants argue that this testimony mandates a finding that appellees' possession was neither hostile nor under claim of right. *See Terral v. Brooks*, 194 Ark. 311, 108 S.W.2d 489 (1937). We disagree.

The record indicates that appellees and their predecessors had openly and visibly occupied the property up to the fence for over forty years before this litigation was commenced. Appellees' predecessor, Mary Teague, testified that the existing fence was in the same location as the one that existed when she purchased the property in 1946, and that she continually maintained the property up to that fence. She testified that she thought that her property extended up to the fence and that she claimed to the fence. She stated that she had used the driveway located on a part of that strip during the entire period of her ownership, and that she had maintained a garden on the disputed area for several years.

Appellee Paul Flanagan testified that he purchased the property from Ms. Teague in 1963, and that the present fence is in the same location as it was when he purchased it. He stated that he thought that he owned all of the property up to the fence, and that he took care of it, mowed it, and maintained flower beds on it. Appellee Larry Smith testified that he and his wife continued to exercise dominion and control over the area after they came into possession of the property under the contract of sale with Flanagan.

Although appellees and their predecessors did state that they had no intention of taking property which did not belong to them, it was undisputed that they honestly believed that their property existed up to the fence and that they claimed ownership of it. In *Rye v. Baumann*, 231 Ark. 278, 329 S.W.2d 161 (1960),

the supreme court noted that an honest claimant, unless previously warned, might not think to qualify his answers so as to claim what he considered to be his own, but would state that he claimed only his own, at which point his claim would disappear. In arriving at the intent of a disseisor, the court considered it "better to weigh the reasonable import of his conduct in the years preceding the litigation rather than rely on one remark made during the stress of cross-examination." 231 Ark. at 281, 329 S.W.2d at 164. When the evidence tends to show that the possession has all the qualities of an adverse holding, it may be presumed that the possession is adverse, absent evidence to the contrary. *Rossner* v. *Jeffery*, 234 Ark. 723, 354 S.W.2d 705 (1962).

In *Terral* v. *Brooks, supra*, the court declared that where one takes possession of the land of another intending to claim only to the true boundary, that possession is not adverse, but if acting on a mistake as to the true boundary, he takes possession of the land of another *believing it to be his own*, the result is different. In such circumstances, the intent to retain possession under an honest belief of ownership is adverse possession. *See also Barclay* v. *Tussey*, 259 Ark. 238, 532 S.W.2d 193 (1976).

Appellants also argue that appellees' possession could not be adverse because they and their predecessors occupied the status of grantor in possession and that their possession therefore was presumptively permissive. *See Pinkert* v. *Polk*, 220 Ark. 232, 247 S.W.2d 19 (1952). We cannot agree. While the record does reflect that prior to 1940 Ms. Annie Shull owned all four lots, there is no evidence that the present fence line was established by her before her grant to the appellants' predecessors. The record discloses that Ms. Shull conveyed lots three and four to one J. O. Murphy in 1940, and that Murphy conveyed the lots to Mary and Carl Teague in 1946. Neither Ms. Shull nor Mr. Murphy testified. While Ms. Teague testified that the fence was in existence when she purchased the property in 1946, there is no evidence that it was built during the common ownership of Ms. Shull.

In any event, that fact, if proven, would not mandate a different result. It is a rule of general application that where a grantor remains in possession there is a presumption that he does

so in subordination to his grant and not in hostility to it. There is, however, an exception to the rule where the occupancy continues unexplained for an unreasonable length of time. Under those circumstances the presumption is gradually overcome by the lapse of time. *Davis* v. *Burford*, 197 Ark. 965, 125 S.W.2d 789 (1939) (possession for twenty-three years); *St. Louis Southwest Railway Co.* v. *Fulkerson*, 177 Ark. 723, 7 S.W.2d 789 (1928) (possession for thirty-nine years); *Tegarden* v. *Hurst*, 123 Ark. 354, 185 S.W. 463 (1916) (possession for fourteen years). Here, the possession continued for a period in excess of forty years.

For the same reason, we find no merit in appellants' argument that appellees failed in their burden of proof by not offering evidence of an intent to hold adversely by the first of their predecessors who made entry into the disputed strip. As the action of the last three owners in appellees' chain of title had all of the qualities of an adverse holding, appellees' holding is presumed adverse, absent evidence to the contrary. *See Rossner* v. *Jeffery, supra.*

Whether possession is adverse to the true owner is a question of fact. *Sharum* v. *Terbieten*, 241 Ark. 57, 406 S.W.2d 136 (1966). Although we review proceedings in chancery cases *de novo* on the record, we do not reverse the decision of a chancellor unless his findings are clearly against the preponderance of the evidence. *Clark* v. *Clark, supra.* From our review of the record, we cannot conclude that the chancellor's finding that appellees' continued possession was with the requisite intent and under claim of right is clearly against the preponderance of the evidence.

We do agree, however, that the chancellor erred in finding that appellees had acquired title by adverse possession as against appellants to that part of the adjoining alley on which appellees' barn is located.

Appellants sought an order requiring appellees to remove the barn. The chancellor held that, although appellees could not adversely claim the alley against the City of Alma, they could, and did, adversely possess the alley against appellants in this case. In reaching this conclusion, the chancellor relied on *Town of Madison* v. *Bond*, 133 Ark. 527, 202 S.W. 721 (1917). The chancellor's reliance on this case is misplaced. *Bond* must be

read in the light of its own facts, which are clearly distinguishable from those present here. For many years, our law permitted the statute of limitations to run against cities, towns, and municipalities. *City of Fort Smith* v. *McKibbin*, 41 Ark. 45 (1883). This rule was changed, however, by an act of the 1907 General Assembly. The act provided that no title or right to occupancy of streets, alleys, or public parks could be acquired by adverse possession against the rights of the public or municipalities. Ark. Code Ann. § 14-301-113 (1987). The act, however, contained a proviso that it not apply to any possession commenced prior to its enactment. In *Bond*, the possession of an alley was commenced in 1905 and it was determined that the 1907 act could have no application. It is now well established that possession commenced after that date can never ripen into title against the public or a municipality. *Wood* v. *Haas*, 229 Ark. 1007, 320 S.W.2d 655 (1959); *City of Magnolia* v. *Burton*, 213 Ark. 157, 209 S.W.2d 684 (1948). Here, there is no evidence that possession of the disputed tract by appellees' predecessors commenced prior to the effective date of the act, and, therefore, *Bond* can have no application.

This does not mean, however, that there was error in the court's failing to grant appellants' prayer for an order requiring appellees to remove the obstruction from the alley. First, the City of Alma was not a party to this action. Second, it is well settled that an abutting landowner is not entitled to seek abatement of an encroachment onto a public street or alley in his own right, except on allegation and proof that he has suffered special damage as a result of the encroachment, which was not common to the public in general. *Mergenschroer* v. *Ashley*, 244 Ark. 1238, 429 S.W.2d 802 (1968); *Adams* v. *Merchants & Planters Trust Co.*, 226 Ark. 88, 288 S.W.2d 35 (1956). Here, appellants proved no special damage, and the court specifically found that appellants had never intended to make any use of the alley. The existence of the barn, therefore, did not specially affect them.

The decree is modified to quiet title in appellees only to those lands described in the decree which lie on part of lots five and eight in block AD, Galloway Addition to the City of Alma, and to exclude any lands lying within the platted alley lying between those two lots. The decree is affirmed in all other respects.

Affirmed as modified.

60

CORBIN, C.J., and MAYFIELD, J., agree.