Betty MASON *v.* James MASON

94-568 895 S.W.2d 513

Supreme Court of Arkansas
Opinion delivered March 13, 1995
[Rehearing denied April 10, 1995.]

*Janice Wegener Vaughn*, for appellant.

*Malcolm R. Smith. P.A.*, for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Betty Mason, appeals the Arkansas County Chancery Court's denial of her motion for new trial, amendment of judgment, and relief from the trial court's division of marital property, accompanying a decree of divorce. The chancellor found, among other things, that appellee

James Mason's Riceland Foods disability benefits and Social Security benefits were not marital property subject to division between the parties under Ark. Code Ann. § 9-12-313(b) as amended by Act 676 of 1987 and Act 1167 of 1991. We accept jurisdiction of this case pursuant to Supreme Court Rule 1-2(a)(3) because it involves the interpretation and construction of these two acts of the general assembly.

Mrs. Mason raises four points on appeal: (1) whether the chancery court erred in refusing to divide Mr. Mason's Riceland Foods disability benefits; (2) whether the chancery court erred in not dividing the parties' Social Security benefits; (3) whether the chancery court erred in awarding an unequal, and much smaller, portion of the parties' marital assets to Mrs. Mason; (4) whether the chancery court erred in finding that the $75,000 James Mason Trust was funded with inherited funds and thus the separate property of Mr. Mason.

We hold that the chancellor erred in parcelling out the marital property by treating Mr. Mason's disability retirement benefits as exempt from division and in awarding an unequal share of assets to the parties without providing a more detailed rationale for doing so. Consequently, we reverse and remand the matter for further proceedings consistent with this opinion.

*Facts*

James and Betty Mason were married on November 6, 1946. Living in Stuttgart, Arkansas, they reared five children over a thirty-eight-year period. In addition to holding other jobs, Mr. Mason was employed for many years by Riceland Foods, Inc., where he rose to an executive position. During the early years of the marriage, Mrs. Mason worked at home as a housewife and mother but occasionally worked outside the home, as well. In 1975, she opened Mason Realty Company, a successful real estate business.

While serving in the South Pacific during World War II, Mr. Mason was wounded three times; one of the wounds resulted in fragmented vertebrae. A shrapnel injury subsequently required surgery. By the 1970s, when he was employed by Riceland Foods, Mr. Mason began having recurrent problems with pain. He lost the use of his left arm and ultimately underwent five operations.

Two surgical procedures entailed the fusing of neck vertebrae and another two the fusing of lower-back vertebrae.

In 1980, after his fifth back operation, Mr. Mason applied for a disability determination under the Riceland Foods Disability Insurance Plan. He was approved and, having retired from the company, received disability payments until he reached actual retirement age.

Mr. and Mrs. Mason separated on September 21, 1984, and Mrs. Mason subsequently filed for divorce. At that time, she disposed of her real estate business and moved to Little Rock. Mr. Mason was then receiving monthly income from the Riceland disability plan as well as a monthly Social Security disability payment. Nine years later, when an absolute divorce was granted, most of the disability payments had been converted to a retirement plan, though some of the disability payments continued under what the chancellor termed in a letter opinion "a complicated company disability and retirement plan."

Hearings in this matter began in September and October 1986. A trial on the merits was conducted on October 29, 1986. After some testimony was taken and some exhibits introduced, the parties announced that they had reached a settlement agreement, which later collapsed. Further hearings were held on March 1, 1988, and on August 1, 1988.

On November 7, 1988, the chancellor filed a letter opinion in which he found that Mrs. Mason was entitled to a divorce but not to an award of alimony. The letter opinion contained numerous findings concerning the parties' income and assets, including a finding that Mr. Mason currently received $3,402.41 per month in Riceland disability benefits as well as $706 in monthly Social Security disability payments. The chancellor also found that Mason Realty Company, Mrs. Mason's enterprise, had, as of March 1, 1988, $321,627.28 in liquid assets. Regarding the disability incomes, the chancery court found that the benefits constituted marital property under Ark. Code Ann. § 9-12-315(b)(6), not being based on either a workers' compensation or personal injury claim and, in any event, not being for any degree of permanent disability or future medical expenses. Mrs. Mason, the court determined, was entitled to receive one-half of Mr. Mason's Riceland and Social Security disability payments. The chancel-

lor found that the Mason Realty assets were marital property subject to equal division, and that alimony was not warranted. Additionally, the court concluded that the James Mason Trust was funded with inheritance money received by Mr. Mason from his mother and was, therefore, not marital property.

Although the chancellor had stated in his letter opinion that Mrs. Mason was entitled to a divorce, a decree of divorce and property division was not entered of record. Instead, the chancellor granted Mr. Mason's request that a Master be appointed to ascertain, for purposes of distribution, the assets of the parties based on the accumulation and expenditure of assets since the previous court orders. A Master was appointed on August 16, 1989, and completed his report on August 18, 1992.

Meanwhile, on September 25, 1991, Mr. Mason filed a motion requesting that the chancery court reopen the issue of whether the Riceland disability benefits were marital property in light of recent amendments to Ark. Code Ann. § 9-12-315(b)(6) regarding marital-property exemptions and allow the introduction of an evidentiary deposition of Mr. Mason's physician for the purpose of showing that the disability was permanent. He asserted that, because Act 1167 of 1991, codified at § 9-12-315(b)(6), excluded benefits for Social Security claims from the statutory definition of marital property, the case should be reopened for additional evidence.

The chancery court reopened the matter, and, on August 24, 1992, further proceedings were held. At that time, Mr. Mason testified about the permanency of his disability. He was also permitted to introduce the deposition of his physician, Dr. Stephen D. Holt, who stated that Mr. Mason's disability was permanent.

On January 26, 1993, the chancellor issued a second opinion letter, filed on February 1, 1993, in which he reiterated his view that Mrs. Mason was not entitled to alimony. He ordered the marital home and other real estate to be sold at public auction. Noting that no final order or decree had been filed granting a divorce to the parties or a division of their property and that the law on marital-property exemptions had changed since his November 1988 letter opinion, the chancellor revised his earlier conclusion, finding that, under the amended § 9-12-315(b)(6), Mr. Mason's Riceland and Social Security benefits were for "per-

manent disability" and therefore outside the category of marital benefits to be evenly distributed.

Since, however, most of the disability payments had by then been converted to retirement benefits due to the fact that Mr. Mason had attained sixty-five years of age, the court found that the retirement-plan payments were marital property and were to be equally divided. Both parties were allowed to continue to draw their own Social Security payments.

As in the November 1988 letter opinion, the chancellor found that the Mason Realty Company assets were marital property to be divided equally and that the James Mason Trust was funded through an inheritance from Mr. Mason's mother and thus not marital property. Regarding the apparently unequal distribution of property and incomes in Mr. Mason's favor, the chancery court observed that it had considered Mr. Mason's amounts and sources of income and his estate and liabilities, "along with the fact that Mrs. Mason has lived on a substantial amount of marital income during the pendency of the divorce."

The court found it equitable that Mr. Mason should keep all of his non-marital property and his equal share of marital property, while allowing Mrs. Mason to have the use of marital income and her equal share of the marital property. The chancellor further found that, based on the entire record, there should be no equalization between the parties regarding expenditures and that Mrs. Mason would not be required to account to Mr. Mason for her expenditures, nor would he be required to account to her for his.

On October 18, 1993, a formal decree of divorce was entered. Mrs. Mason then filed a motion for new trial, amendment of judgment, and relief from decree, which was denied by the chancery court on November 24, 1993. From that order, this appeal arises.

*I. Riceland Foods disability benefits*

Mrs. Mason subdivides her first argument into three subpoints.

*a. Whether the Riceland Foods disability plan fits within the statutory exceptions to marital property*

According to Mrs. Mason, the Riceland Foods disability benefits do not fit within the exceptions to the definition of mar-

ital property set forth in Ark. Code Ann. § 9-12-315(b)(6) (Repl. 1993). Under Ark. Code Ann. § 9-12-315(a), at the time a divorce decree is entered, the chancery court must distribute all martial property "one-half (1/2) to each party unless the court finds such a division to be inequitable." The term "marital property" is defined in § 9-12-315(b) as "all property acquired by either spouse subsequent to the marriage" with certain specified exceptions. Among those are the exceptions presently in question, listed in subsection (b)(6):

> Benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim when those benefits are for any degree of permanent disability or future medical expenses. . . .

This statutory subsection, on which the chancellor relied in his February 1993 letter opinion, incorporates two amendments. Act 676 of 1987 excepted workers' compensation and personal injury claims when those benefits are for any degree of permanent disability or future medical expenses. Act 1167 of 1991 added an exception for Social Security claims.

As noted earlier, Mr. Mason began receiving disability payments from Riceland Foods in 1980. Dr. Stephen D. Holt characterized Mr. Mason's condition as chronic pain syndrome due to arthritis, hypothyroidism, and nerve damage from scar tissue. The benefits were derived from a disability policy purchased by Riceland, with contributions from Mr. Mason, during the marriage of the parties. As previously indicated, at the time of the separation, Mr. Mason received, for his own use, monthly disability payments amounting to $3,401.21.

Mr. Mason turned sixty-five during the course of the divorce proceedings, and most of the disability benefits were then converted into retirement benefits. Mrs. Mason contends that the chancellor erred in failing to find that the Riceland disability payments made to Mr. Mason, up to retirement age and that portion remaining since constitute marital property subject to equal distribution.

Mr. Mason counters that his physical problems had their origins in his World War II injuries, which were aggravated in the 1970s during his tenure at Riceland by his loss of the use of

his left arm and a work-related fall. He asserts that the disability payments resulted from these injuries, sustained prior to and during his employment with Riceland, and insists that the benefits fall squarely within the exception set forth in Ark. Code Ann. § 9-12-315(b)(6). The implication is that the disability benefits were based on a "personal injury claim."

This court held, in *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), that retirement benefits were marital property. In *Morrison* v. *Morrison*, 286 Ark. 353, 692 S.W.2d 601 (1985), we recognized that disability benefits also constituted marital property, analogizing them to the pension benefits in the *Day* case. "There is no meaningful distinction," we noted, "between an annuity payable upon disability and one payable upon longevity." 286 Ark. at 355, 692 S.W.2d at 602-3.

The court of appeals, in *Dunn* v. *Dunn*, 35 Ark. App. 89, 811 S.W.2d 336 (1991), reversed a chancellor's finding that a divorced husband's disability income was not marital property. Summarizing its view of the matter, the appellate court declared:

> Under the circumstances, where the appellee's employer during the marriage provided a long-term disability insurance plan for its executives; where these benefits were in lieu of workers' compensation, and were not awarded as benefits for a permanent disability or for future medical costs; and where the disability entitling the appellee to collect the benefits provided by the plan occurred during the marriage; we hold that the property was acquired during the marriage and furthermore, is marital property as defined by the statute [Ark. Code Ann. § 9-12-315(b)].

35 Ark. App. at 93, 811 S.W.2d at 339.

In *Clayton* v. *Clayton*, 297 Ark. 342, 760 S.W.2d 875 (1988), this court reversed a chancellor's finding that an unliquidated personal injury claim under the Federal Employers' Liability Act (FELA) was not marital property under § 9-12-315(b)(6). We emphasized that Act 676 of 1987 "excepted from marital property only those benefits from an unliquidated personal injury claim that would be for any degree of permanent disability or future medical expenses." 297 Ark. at 344, 760 S.W.2d at 877.

Apart from those specific benefits, we continued, "the remaining benefits or elements of damage from one's personal injury claim are subject to division as marital property pursuant to Ark. Code Ann. § 9-12-315(a)(1)(A)." *Id.* The case was remanded for a determination of which benefits from the FELA claim were to be considered marital property.

 Clearly, then, the mere labeling of a claim as "personal injury" does not satisfy the requirement for exemption from marital property. It is necessary that the claim be for a degree of permanent disability or future medical expenses. At first glance, Mr. Mason's claim would seem to fit the category. His physician, Dr. Holt, wrote in 1983 that Mr. Mason was "permanently impaired from any type of gainful employment at present or any time in the future." He had not changed his opinion by the time he testified in 1992. Thus, it might be possible to distinguish Mr. Mason's position from that of the appellee in *Dunn* v. *Dunn, supra*, where the court of appeals noted, in holding that disability payments were marital property, that the payments at issue were not for a permanent disability.

 But the crux of the matter here lies in the antecedent term "personal injury," which has been defined, in relevant part, as

> a hurt or damage done to a man's *person*, such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property or his reputation. The phrase is chiefly used in this connection with actions of tort for negligence and under worker's compensation statutes.

*Black's Law Dictionary* 786 (6th ed. 1990). (Emphasis in original.)

The *Clayton* case involved an on-the-job injury for which the party had made a claim under FELA. In the present case, as Mr. Mason acknowledges, the ultimate source of his disability can be traced back to the wounds he suffered in World War II rather than to a specific "personal injury" sustained while in the employ of Riceland Foods or in consequence of a tortious act. Although he did experience a work-related fall at Riceland, that injury merely exacerbated the pain he already suffered and admittedly was not the principal cause of the permanent disability. The work-

ers' compensation exception in § 9-12-315(b)(6) addresses the aggravation of pre-existing conditions.

To equate Mr. Mason's long-term physical condition with a "personal injury" would be to stretch the concept to the point of meaninglessness. Instead, the accounts given of his problems suggest the term "bodily injury," which is defined as "[p]hysical pain, illness or any impairment of physical condition." *Black's Law Dictionary* 786 (6th ed. 1990).

For these reasons, we hold that Mr. Mason's claim for his physical condition does not constitute a claim for "personal injury" as contemplated by Ark. Code Ann. § 9-12-315(b)(6) and therefore does not fall within the statutory marital-property exemption. We reverse and remand the matter to the chancellor for an equal division of Mr. Mason's Riceland Foods disability benefits.

> *b. Whether the chancery court erred in finding that Mr. Mason's disability benefits were for a permanent disability*

The second subsection under Mrs. Mason's first point for reversal is an argument in the alternative. She urges that, even if the Riceland Foods disability plan comes within the exceptions of Ark. Code Ann. § 9-12-315(b)(6), the chancellor erred in finding that Mr. Mason's Riceland disability benefits were for a permanent disability.

In his 1988 letter opinion, the chancellor found that Mr. Mason had not provided any evidence that the Riceland and Social Security benefits were for permanent diability or future medical expenses. After reopening the case and receiving the deposition of Dr. Holt, the chancellor found, in his 1993 letter opinion and decree, that the benefits were for a "permanent disability."

Mrs. Mason urges that the record shows that neither her former husband's condition nor his treatment had undergone a major change since Dr. Holt's first deposition in 1986 and that Mr. Mason continued to work (as Chairman of the Board of the Department of Correction) until 1992. These factors, she contends, indicate that Mr. Mason did not suffer from a "permanent disability."

On the other hand, in the 1992 deposition, Dr. Holt described

Mr. Mason's neurological problems as "permanent in nature." The purpose of treatment at this point, Dr. Holt opined, would be limited to assisting Mr. Mason in learning how to deal with a permanent injury.

■ Given the emphatic tone of the physician's 1992 deposition and the chancellor's position as finder of fact, it cannot be said that the chancery court erred in finding that Mr. Mason's Riceland Foods benefits were for a permanent disability.

> *c. Whether the chancery court erred in reopening the case four years after a final decision strictly for the narrow purpose of allowing Mr. Mason to submit a second evidentiary deposition of his physician.*

As recited earlier, on November 7, 1988, the chancellor entered his findings of fact and conclusions of law in the present case. No final decree was filed. Later, on August 24, 1992, the chancellor reopened the matter, in the light of the statutory changes, to allow Mr. Mason to introduce the deposition of his physician, Dr. Holt, concerning the permanency of the disability.

■ Mrs. Mason contends that the chancellor erred in reopening the case because the chancellor's decision in 1988 was final, despite the absence of a formal entry of a divorce decree, which, she insists, was delayed by her former husband's actions. Yet, as this court has explained:

> The decisions, opinions, and findings of a court do not constitute a judgment or decree. They merely form the bases upon which the judgment or decree is subsequently to be rendered and are not conclusive unless incorporated in a judgment or a judgment be entered thereon. . . . They are more in the nature of the verdict of a jury and no more a judgment than such a verdict.

*Thomas* v. *McElroy*, 243 Ark. 465, 469-70, 420 S.W.2d 530, 533 (1967).

■■ We have held that a chancellor is vested with the discretion to reopen a case before the entry of a final decree upon the record. *Kennedy* v. *Kennedy*, 243 Ark. 773, 421 S.W.2d 611 (1967). Before doing so, however, the court must afford both parties the opportunity to be heard on the matter. *Tackett* v. *First*

*Savings of Arkansas*, 306 Ark. 15, 810 S.W.2d 927 (1991). Here, both parties briefed the issue. The chancellor, not having entered a final decree pursuant to Ark. R. Civ. P. 58, did not err in reopening the case to permit introduction of Dr. Holt's deposition.

## II. Social Security benefits

In her second point for reversal, Mrs. Mason contends that the chancery court erred in not dividing the parties' Social Security benefits. The issue is readily resolved by an examination of Ark. Code Ann. § 9-12-315(b)(6), which plainly exempts from marital property "Benefits received or to be received from a . . . social security claim when those benefits are for any degree of permanent disability or future medical expenses."

The chancellor did not make a finding with respect to the permanency of disability in the context of Social Security benefits, but it was unnecessary for him to do so as he had found Mr. Mason's disability permanent in connection with the Riceland Foods benefits. Therefore, the exemption requirement was satisfied for both purposes, and the chancery court did not err in not dividing the parties' Social Security benefits.

## III. Unequal division of marital assets

For her third point for her reversal, Mrs. Mason argues that the chancellor erred in awarding her an unequal, and much smaller, portion of the parties' marital assets. She asserts that during the nine years that the divorce action was pending, the chancery court consistently ruled that the parties would be required to account for all income and assets acquired or spent during their separation. Yet, she maintains, while an accounting was required of her, Mr. Mason, who she alleges spent approximately $600,000 during the pendency of the action, was not compelled to account for his expenditures and was allowed to keep as his own separate property everything he purchased in that period.

Mrs. Mason notes that, from the outset, Mr. Mason was permitted to live on his retirement income and his Social Security benefits as well as on one-half of the parties' joint marital rental income. She states that she, on the other hand, was obliged to live on interest income from both her Mason Realty assets and the other marital assets in her hands as well as one-half of the joint marital rental income.

Arkansas family law provides that:

All marital property shall be distributed one-half (1/2) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:

(i) The length of the marriage;

(ii) Age, health, and station in life of the parties;

(iii) Occupation of the parties;

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 1993).

The chancellor outlined and addressed each of these factors in his 1993 letter opinion. Based on the entire record and with particular reference to the nine statutory considerations, the chancellor found that "there should be no equalization between the parties as to expenditures. Mrs. Mason will not be required to account to Mr. Mason for her expenditures and he shall not be required to account to her for his."

The chancellor weighed Mr. Mason's amounts and sources of income and his estate and liabilities against the fact that Mrs. Mason had lived on a substantial amount of marital income during the progress of the divorce action. "When all things are considered," he wrote, "equity should allow Mr. Mason to keep all of his non-marital property, while allowing Mrs. Mason to have

the use of the marital income and her equal share of the marital property."

It appears that the chancellor was endeavoring to balance the equities to the extent possible, granting the use of marital income to Mrs. Mason by way of compensation for allowing Mr. Mason to keep the disability benefits, rental income, and other non-marital property. Mrs. Mason insists, however, that despite having received the use of marital income, her income was still less than Mr. Mason's ($293,205.64 compared to $803,325.68, according to her figures). Moreover, she points out, the chancellor only took into account income from September 1984, when the parties separated, through July 1991.

The chancellor is given broad powers to distribute all of the parties' property in a divorce action in order to achieve an equitable distribution. *Dunn* v. *Dunn, supra.* In the *Dunn* case, the court of appeals noted that, having decided to remand the case, it was unnecessary to address the argument that the court had erred in making an unequal division of the parties' joint savings account. The appellate court remanded the case to the chancellor for a full resolution of the issue of property rights.

In the present case, we have determined that the matter must be reversed and remanded on the issue of the Riceland Foods disability benefits. Although, on *de novo* review, we have conducted our own examination of the parties' expenditures and the division of marital assets, scrutinizing the transcript of the proceedings, we have concluded that the record in this appeal does not provide sufficient evidence for us to reach a conclusion. In view of these circumstances, we are of the opinion that fairness requires our remand of this cause to permit both parties to develop their evidence regarding the equitable distribution of marital property. *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). We therefore remand this issue to the chancery court for a complete resolution of questions pertaining to the unequal distribution of marital assets.

Our decision to remand on the third point is based on other, compelling considerations. The chancellor's findings with regard to the division of marital property are couched in general terms, with few figures cited. Further, as Mrs. Mason correctly notes,

the chancellor relied on calculations in the Master's report, which covered only the years 1984 to 1991.

■ To some extent, the division of Riceland Foods disability benefits will remedy any existing inequities in the chancellor's distribution of assets. On remand, we direct the chancellor to extend the period for the income and expenditure calculation to the date of the divorce decree and to resolve all outstanding questions relating to the unequal distribution of marital property.

### IV. Funding of James Mason Trust

■ Finally, Mrs. Mason argues that the chancery court erred in finding that "[t]he James Mason Trust was funded with funds and property received by Mr. Mason through his inheritance from his mother" and, therefore, not marital property. Property received by gift, bequest, devise, or descent is not marital property subject to equal division upon divorce. Ark. Code Ann. § 9-12-315(b)(1) (Repl. 1993); *Gorchik* v. *Gorchik*, 10 Ark. App. 331, 663 S.W.2d 941 (1984), overruled on other grounds in *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986). Mrs. Mason cites *Aldridge* v. *Aldridge*, 28 Ark. App. 175, 773 S.W.2d 103 (1989), for the principle that the burden is on the party who asserts an interest in property to establish that it is in fact separate property not subject to division.

At the time that the chancery court's decree was entered, the James Mason Trust contained the amount of $75,000. This figure, Mrs. Mason maintains, is substantially more than the $34,066.67 shown by the probate records to have been his share of his mother's estate. Mrs. Mason urges that the chancery court should have required Mr. Mason to account for the funds over and above the $34,066.66 from his mother.

■■ According to Mr. Mason's testimony, he received $30,000 from his mother's will, another $30,000 in cash from his father, and $15,000 from the sale of his mother's house. On that basis, the chancellor made his finding. Although appellate courts review chancery cases *de novo* on the record, a decree is not reversed unless the chancellor's findings are clearly erroneous or clearly against a preponderance of the evidence, and, because the question of preponderance turns heavily on the credibility of the

witnesses, deference is accorded the superior position of the chancellor in this regard. *Gorchik* v. *Gorchik, supra.* It cannot be said that the chancellor's finding that the James Mason Trust was Mr. Mason's personal property was clearly erroneous.

### Conclusion

The chancellor, in his decree, made particular note of the fact that the findings, conclusions, and divisions of marital property were based on the entire decision rendered in this case and that a change in the status of one could very well result in a change in the status of the other. "Should the case be appealed," he declared, "and all or part of the decision is overturned, my opinion regarding the Findings, Conclusions, and division of property may be different."

In a similar vein, in *Wilson* v. *Wilson, supra,* where we reversed and remanded a chancellor's erroneous rulings on the division of a party's incentive bonus and valued interest in a company for which he worked, we noted that "[b]ecause these property interests must be reconsidered by the chancellor, we are aware that any readjustment of these interests also might affect his earlier decision concerning the issue of alimony." 294 Ark. at 206, 741 S.W.2d at 647.

In sum, we hold that the chancellor erred in finding that the Riceland Foods disability benefits were statutorily exempted from the category of marital property and that the matter must be reversed and remanded for an equal division of the benefits in question. As stated above, we review chancery cases *de novo* on the record. *Williams* v. *Ashley*, 319 Ark. 197, 890 S.W.2d 260 (1995). Here, we have examined the record at length in an effort to resolve all outstanding matters in this appeal. After careful study, we have determined that the record provides insufficient evidence to enable us to reach a conclusion and that, in fairness, we must remand as well for the purpose of allowing the parties to develop their evidence on the proper distribution of marital property. *Wilson* v. *Wilson, supra.*

Therefore, we reverse and remand this case to the chancellor for further proceedings consistent with this opinion, directing him to reconsider and remedy, if necessary, any existing inequities in the distribution of assets (extending the period for

the income and expenditure calculations to the date of the divorce decree) and to resolve any and all remaining questions relating to the unequal distribution of marital property.

CORBIN, J., not participating.