Dayton MOSES, et ux. *v.* Ella DAUTARTAS

CA 95-366                                    922 S.W.2d 345

Court of Appeals of Arkansas
En Banc
Opinion delivered May 15, 1996

*Dan McCraw*, for appellants.

*D. Scott Hickam*, for appellee.

JOHN MAUZY PITTMAN, Judge. The appellants, Dayton and Betty Moses, appeal from a chancery court order holding that the appellee, Ella Dautartas, proved adverse possession of land to which

appellants hold legal title. We affirm.

The parties to this appeal own adjoining property in the Quinn's Lake Park Subdivision in Garland County. Appellee filed a complaint in May 1993, claiming ownership by adverse possession to a narrow strip of land on the western edge of appellants' property. Appellee asserted that she had utilized and maintained the area for over seven years and that a portion of a concrete drainage system she had constructed had been located in the area since 1985. No one resided on appellants' property until appellants bought it in June 1992 and built a house. This action was filed after appellants built a fence in the disputed area.

It is well settled that, in order to establish title by adverse possession, appellee had the burden of proving that she had been in possession of the property continuously for more than seven years and that her possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over her own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. Whether possession is adverse to the true owner is a question of fact. *See Walker* v. *Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990); *Hicks* v. *Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990). Although this court reviews chancery cases *de novo* on the record, it does not reverse the decision of a chancellor unless the chancellor's findings are clearly against the preponderance of the evidence, giving due deference to the chancellor's superior position to judge the credibility of the witnesses and the weight to be given their testimony. *Lee* v. *Lee*, 35 Ark. App. 192, 816 S.W.2d 625 (1991); *Appollos* v. *Int'l Paper Co.*, 34 Ark. App. 205, 808 S.W.2d 786 (1991).

Appellee, who purchased her property in 1972, testified that she and her son, Ray Dautartas, began living on the property in 1976. She stated that during the following years, she and her son utilized and maintained the disputed area by stacking lumber and roof shingles there, by mowing and raking the area, by burning leaves there, and by uprooting a tree in the area in 1982. Appellee also stated that her use of the area could be seen from the road and that there were no objections to the use. In addition, appellee

presented bills dated in 1985 for the construction of the concrete drainage system, which curves around her garage and is partly in the disputed area. She testified that an underground pipe was later installed in the area to improve the drainage system. Ray Dautartas testified that he cut grass and raked leaves in the area and also used it as a storage area for firewood and shingles. He stated that the woodpile was approximately four feet high and sixteen feet long. Wade Spainhour, who surveyed the property for appellee, testified that he saw landscape timber and part of the drainage system in the area. He stated that appellee's property to the east of the area was wooded with normal ground cover but that there was ground ivy in the disputed area, resulting in that area looking "different."

Appellant Dayton Moses testified that he and his wife bought their property in May 1992 and built a house there. He stated that during the construction of the house, appellee complained that a construction worker had intruded on her property. He also stated that he did not see any maintenance or use of the disputed area by appellee. Mr. Moses testified that aside from trash such as cans, broken glass, dumped concrete, and a half-buried tire, the only thing he saw in the area was a tree that had been uprooted and a pile of dirt. He stated that when appellee offered to buy a portion of the disputed area, he refused to sell it. Appellant Betty Moses testified that she saw no sign of maintenance in the area.

James Stevens, whose grandmother owned the Moses' property for many years prior to her death in 1990, testified that he gave the property a "cursory overview" every four months. He stated that he did not see stacks of wood and shingles or anything else unusual in the disputed area.

The chancellor, who viewed the property, stated in a letter opinion that pursuant to the survey presented by Mr. Spainhour and her inspection of the property, the concrete drainage structure clearly encroached on appellants' property and had done so in excess of seven years. The chancellor stated that appellee and her son "presumed their encumbrances were proper and immediately took action when those encroachments were challenged by [appellants]." After discussing in detail the testimony presented at trial, the chancellor concluded that the evidence showed "that for over seven years the area in dispute was utilized by [appellee] with a clear, distinct and unequivocal intention that the disputed area belonged to her. Moreover, no one challenged the use of this land and,

further, the existence of the underground pipe and concrete structure is not disputed."

On appeal, appellants concede that appellee met her burden in showing adverse possession of "the two or three square feet of concrete in her garage drainage system that are obviously over the line." Appellants argue, however, that appellee failed to show possession to the full extent of the land she claimed. The appellee, who makes her claim without color of title, responds that she presented sufficient evidence of her possession of the property and of her intent to hold adversely against the true owner.

■ The quantum of proof necessary for a trespasser to establish title to land by adverse possession is greater where the trespasser has no color of title. *DeClerk* v. *Johnson*, 268 Ark. 868, 596 S.W.2d 359 (Ark. App. 1980). When one is claiming without color of title, as appellee does here, she must show pedal or actual possession to the extent of the claimed boundaries for the required seven years. *Id.* Appellants appear to be arguing that appellee was required to place a structure or improvement on the disputed area. We do not agree. The difference between claiming adversely with and without color of title was discussed in *Clark* v. *Clark*, 4 Ark. App. 153, 632 S.W.2d 432 (1982), as follows:

> One who enters adversely under color of title and actually possesses any part of the tract is deemed to have constructive possession of the entire area described in the document constituting color of title. *St. Louis Union Trust Co.* v. *Hillis*, 207 Ark. 811, 182 S.W.2d 882 (1944). Where one enters adversely upon an enclosed tract his possession of any part thereof is constructive possession of the entire enclosure. *Kieffer* v. *Williams*, 240 Ark. 514, 400 S.W.2d 485 (1966). Where, as here, one enters with neither color of title nor enclosure he is unaided by constructive possession and his claim is limited to that area over which he maintains actual pedal possession. *DeClerk* v. *Johnson*, 268 Ark. 868, 596 S.W.2d 359 (1980).

4 Ark. App. at 159-60, 632 S.W.2d at 436-37. Here, appellee claimed actual possession of the disputed area, not constructive possession.

In light of the total circumstances of this case, we find that the chancellor's findings are not clearly against a preponderance of the

evidence. The chancellor noted in the letter opinion that appellee's son corroborated appellee's testimony and stated:

> Specifically, he testified that he worked on the property, cutting grass, raking leaves, cutting and hauling wood and also storing shingles for roofing on the disputed land. He testified that the pile of lumber and wood as well as the shingles were placed in broad daylight behind the garage on the now disputed property, and no one ever challenged his or his mother's use of the land for those purposes. The woodpile was highly visible, he stated, for it was at least sixteen feet long and four feet high.

The chancellor also discussed Mr. Stevens' testimony that there was no visible sign of encroachment on his grandmother's property. Although the chancellor described the testimony as credible, she stated: "[H]owever, he was unable to deny the existence of the concrete drainage structure as well as the drainage pipe. These actual encroachments were over seven years old and were readily visible upon the Court's inspection of the property."

In the dissent's view, this case must be reversed and remanded to cure a perceived inconsistency between the chancellor's letter opinion and the final judgment. We find this view to be flawed in several respects. First, the chancellor's findings in the letter opinion clearly did not constitute a judgment.

> The decisions, opinions, and findings of a court do not constitute a judgment or decree. They merely form the bases upon which the judgment or decree is subsequently to be rendered and are not conclusive unless incorporated in a judgment or a judgment be entered thereon. They are more in the nature of the verdict of a jury and no more a judgment than such a verdict.

*Thomas* v. *McElroy*, 243 Ark. 465, 469-70, 420 S.W.2d 530, 533 (1967) (citations omitted). *See also Mason* v. *Mason*, 319 Ark. 722, 895 S.W.2d 513 (1995). A final determination of the parties' rights was not made until the entry of the judgment. Second, the issue of any inconsistency between the chancellor's letter and the final judgment was neither raised by objection or motion below nor raised by the parties on appeal. Even if the trial court were in error, it cannot be seriously argued that the case should be reversed because to do so would require the application of the "plain error" doctrine,

which we do not have in Arkansas. *Security Pac. Housing Servs., Inc. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993); *Lynch v. Blagg*, 312 Ark. 80, 847 S.W.2d 32 (1993); *Pharo v. State*, 30 Ark. App. 94, 783 S.W.2d 64 (1990).

▮ The exact boundaries and description of the claimed area are presented in Mr. Spainhour's survey, and this description was incorporated into the final judgment. Appellee and her son testified that their activities covered this area. The chancellor viewed the area and assessed the credibility of the witnesses, and the court's finding that appellee proved actual possession to the extent of the claimed boundaries is not clearly against a preponderance of the evidence.

Affirmed.

JENNINGS, C.J., and MAYFIELD and ROGERS, JJ., agree.

GRIFFEN and NEAL, JJ., concur in part, dissent in part.

WENDELL L. GRIFFEN, Judge, concurring in part, dissenting in part. I agree with the decision to affirm the chancellor in this adverse possession case to the extent that actual and continuous possession is proved for the disputed area north of the concrete drainage structure. However, I write to explain my view that the decree must be reversed in part and remanded to the chancellor so that it can be reformed to reflect the true extent of the appellee's actual ("pedal") possession.

The decree was drafted by counsel for appellee at the direction of the chancellor in an opinion letter dated August 24, 1994. That letter stated, in pertinent part:

> The primary issue in this case, after one has examined the property, is whether or not there was sufficient adverse possession or maintenance on the property to meet the requirements of adverse possession concerning that property NORTH OF THE VISIBLE CONCRETE DRAINAGE STRUCTURE. The testimony of the Plaintiff [appellee] and her son indicates that they presumed their encumbrances are proper and immediately took action when these encroachments were challenged by defendants [appellants]. Plaintiff and Plaintiff's son testified that the concrete drain had existed for over seven years and that the other encroachments leading to the road had existed well over seven years. Mrs. Dautartas and

her son testified to the following facts: she purchased the property in 1976; she mowed and raked and built the garage with her son's help which encroached on the disputed property; she utilized the disputed area to stack wood or to store construction materials.

. . . .

Plaintiff is only claiming the disputed area of which she has maintained ACTUAL POSSESSION. THIS AREA IS THE AREA FROM THE CONSTRUCTED DRAINAGE STRUCTURE NORTH TO ATKINSON'S ROAD.

Mr. Hickam [counsel for appellee/plaintiff] is requested to prepare a precedent for entry by the court, complete with the PROPER LEGAL DESCRIPTION OF PLAINTIFF'S ACQUIRED PROPERTY AND INCLUDING THE FINDINGS CONSISTENT WITH THIS LETTER DECISION. (Emphasis added.)

It is beyond question in actions for adverse possession that where one enters with neither color of title nor enclosure she is unaided by constructive possession, and her claim is limited to that area over which she maintains actual pedal possession. *Clark v. Clark*, 4 Ark. App. 153, 632 S.W.2d 432 (1982). Appellee claimed no title by color of title, and conceded the appellant's legal title. Thus, she was a trespasser who claimed title by adverse possession. Both the evidence at trial and the chancellor's letter opinion limited the area of appellee's pedal possession to land north of the concrete drainage structure. There was no evidence of pedal possession south of that point. The chancellor did not find that there was evidence of pedal possession south of that improvement. Therefore, the decree is clearly erroneous because the legal description of the property that appellant acquired by adverse possession includes land south of the concrete drainage structure. Reversal and remand is necessary if the decree is to be consistent with the trial proof, and if the result is to be consistent with established notions of justice regarding the extent that a trespasser can acquire title by adverse possession.

I am authorized to state that Judge Neal joins in this opinion.